Earl Wayne POLVADO, Appellant,

v.

STATE of Texas, Appellee.

No. A14–83–661CR.

Court of Appeals of Texas, Houston (14th Dist.)

April 11, 1985.

H.P. Brelsford, Houston, for appellant.

John B. Holmes, Dist. Atty., Lori B. Millberg, Asst. Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and ELLIS, JJ.

## OPINION

**J. CURTISS BROWN, Chief Justice.**

The appellant was convicted by a jury of the offense of aggravated rape of a child. The jury assessed punishment at ten years in the Texas Department of Corrections. Appellant brings thirteen grounds of error on appeal. We reverse and remand for a new trial. We discuss only those grounds of error which bear upon an issue requiring reversal. Those grounds of error not specifically discussed have been judged to lack merit and are overruled.

M_____ T_____, the complainant, was seven years old at the time of the alleged offense, July 30, 1982. She resided in the home of the appellant, her stepfather, together with her brother and her mother, Carol Polvado, appellant's wife. The alleged offense took place the day before the complainant and her brother left appellant's house to stay with their natural father and his present wife for the summer. Their natural father and natural mother were divorced in 1977.

The complainant testified that on that day appellant called her into his bedroom and closed the door. She further testified that he took off her pants and also his pants, laid her face down on the bed and performed intercourse with her from a standing position. She testified that he had previously done that or something like that at least five times.

Her brother, who was ten years old at the time of trial, also appeared as a witness. He testified that from his vantage point in the living room he saw his sister with appellant in appellant's bedroom. He said further that the door to the room had been closed and that his sister and appellant had come out of the room after about five minutes. At a later point in the trial defense counsel attempted to bring up certain accusations the brother made that he, too, had been sexually molested by the appellant, and that these accusations had proved unfounded. It appears that these allegations had been the basis of a separate prosecution of the appellant which the State dismissed. The court promised to review any available legal and medical records stemming from this separate set of allegations but the matter, having been deemed a collateral matter by the court, never came to the attention of the jury.

Evidently the accusations by the brother first surfaced at about the same time as the complainant first told her natural father and his wife Marceldine the things that appellant had allegedly done to her. Complainant and her brother had already left appellant's house and had been staying with their natural father for one week. Marceldine had observed that complainant's underwear became badly stained each

day by a vaginal discharge. The discharge persisted, and upon hearing from the complainant of the alleged offense took her to the Pasadena police station. They met there with Sergeant E.E. Richardson. Charges were then filed against the appellant.

The child was also taken to be examined by a physician, Dennis Yaworski. Dr. Yaworski appeared at trial. He testified that upon examining the complainant he had made a diagnosis of a haemophilus infection, which is so rare among pre-pubertal females that where it appears there should be a high degree of suspicion of sexual abuse.

Several months after the alleged offense occurred the complainant and her brother began visiting their mother again. During these visits they made several tape recordings. These tapes contain a mixture of singing, spontaneous nonsensical utterances, and clear, categorical statements to the effect that no sexual offense had occurred, that their stepfather had done nothing to them, that they did not want appellant to go to jail, and that their natural father had forced them to make the accusations of sexual abuse against appellant.

Each child was questioned about the tapes at trial. Both admitted making them, but both claimed that their mother had forced them to make the tapes even though the allegations were true.

■ In ground of error three appellant contends that the trial court erred in allowing the complainant and her brother to testify that their mother, Carol Polvado, had coerced them into making the three tapes in which they state that appellant had done nothing. He points out that she was indicted and tried for the offense of tampering with a witness in connection with the making of the tapes and was acquitted. In view of the result in the jury-tampering case, appellant argues that the doctrine of collateral estoppel should have been applied to bar all testimony that the mother had manipulated the children into making the tapes. The Court of Criminal Appeals has

defined collateral estoppel, as it applies to criminal matters, as follows:

"Collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated *between the same parties* in any future lawsuit.'" *Dedrick v. State*, 623 S.W.2d 332, 336 (Tex.Crim.App.1981), quoting *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (emphasis added).

This case is not between the same parties as were involved in the prosecution of Carol Polvado. We decline appellant's invitation to attempt to extend the principle of collateral estoppel beyond its present boundaries. Appellant's third ground of error is overruled.

■ In a related point, appellant in his fourth ground of error contends that once the State broached the issue of whether the children had been coerced into making the tapes, the jury should have been allowed to hear the tapes to judge for itself whether the allegations of coercion were true. We agree. The tapes in question were among the most important means by which appellant attempted to mount his defense. Obviously in a criminal prosecution there can be no substitute equal in value to a direct contradiction of the defendant's guilt made in his accuser's own words. We think that the exclusion of the tapes was error "calculated to injure the rights of [the] defendant" and resulted in an unfair trial. It therefore mandates reversal.

■ The State had presented several theories which, if applicable, would persuade us to overrule this ground of error. First the State argues that appellant's ground of error is multifarious because appellant complains of the exclusion of many separate statements on three different tapes. TEX.CODE CRIM.PROC. art. 40.09 § 9 (Vernon Supp.1985), which governs the form of appellant's briefs on appeal, provides as follows:

"... Each ground of error shall briefly refer to that part of the ruling of the trial court ... in such a way so that the

point of objection can be clearly identified and understood by the court."

We clearly understand appellant's point of objection regarding the tapes: he says the jury should have heard them. We think that appellant has complied with Article 40.09 in this regard.

If the only form of impeachment of the two child witnesses for which appellant sought the introduction of the tapes were that of establishing the truth of the exonerating statements therein, then we would require greater specificity from the appellant as to which *statements* in the tapes should have been admitted. But appellant had two conceptually different goals in mind when he sought to introduce the tapes. First, he surely hoped that the jury might believe the statements therein exonerating him.

Just as importantly, however, he also sought to introduce the tapes to rebut the State's contention that the children had been coerced into making them. Viewed from this perspective, the mixture of different types of utterances in the tapes serves the purpose of one unit of evidence which is not multifarious. Under the principle that the jury is the sole judge of the credibility of the witnesses, *Minx v. State*, 615 S.W.2d 748, 749 (Tex.Crim.App.1981), the jury cannot be expected to fairly evaluate the credibility of the children on the coercion issue if it is deprived of the means best calculated to aid them in doing so.

■ Contrary to the State's contention, appellant did not fail to lay a proper predicate for the introduction of the tapes. Once again we must distinguish between the two purposes for which appellant sought to introduce the tapes. If the only purpose would have been to impeach the children on the truth of their accusations against appellant, the State would have reason to claim that appellant's right to introduce the tapes vanished when the children first admitted making the statements therein, thus destroying the "denial" predicate for admissibility. *See Ellingsworth v. State*, 487 S.W.2d 108, 112 (Tex.Crim.App. 1972).

But the denial predicate existed on the coercion issue throughout the trial. The children unequivocally stated that their mother had coerced them into making the tapes. That suffices to establish the denial basis of admissibility as required by *Ellingsworth*. Also, the State's claim of the insufficiency of appellant's predicate as to the time, place, and circumstances of the tapes is without foundation. The children appeared to fully understand what tapes appellant's counsel was referring to during cross-examination. Finally, the exclusion of the tapes is not harmless error. Appellant's fourth ground of error is sustained.

■ Having so held, we also sustain appellant's eleventh ground of error, which complains of the trial court's refusal to allow appellant to question the witness (Sergeant) Richardson to testify as to his impressions of the physical appearance of the two children when he saw them the day after their mother had allegedly hit them to make them testify falsely in a tape recording. Given that the State first elicited the children's testimony that they had been hit, appellant should have been allowed to ask Richardson whether he remembered seeing any signs of physical abuse in the children the day he saw them.

We also sustain ground of error number five. The complainant's brother testified at trial on behalf of the state. Appellant attempted to cross-examine his stepson (complainant's brother) concerning allegations the brother had made against him, namely that appellant had sexually abused him (the brother) as well as the complainant. These accusations had formed the basis of separate charges of the appellant which were dropped by the State before trial. In ground of error five appellant complains of the court's refusal to permit appellant to cross-examine the boy as to whether these other allegations were baseless.

■ The outcome of this question depends on whether we regard the brother's separate allegations as collateral, and therefore not a proper subject for cross-ex-

amination under *Hoffman v. State*, 514 S.W.2d 248 (Tex.Crim.App.1974), or as admissible as a prior accusation under *Thomas v. State*, 669 S.W.2d 420 (Tex.App.—Houston [1st Dist.] 1984, pet ref'd). *Hoffman* states the general rule that a witness may not be cross-examined as to any fact which is collateral and irrelevant to the main issue at trial. *See Hoffman* at p. 252. The test as to whether a matter is collateral is whether the cross-examination party would be entitled to prove it as a part of his case tending to establish his plea. *Arechiga v. State*, 462 S.W.2d 1, 2 (Tex.Crim. App.1971).

█ In conducting this inquiry we are mindful that no charge is more easily made and more difficult to disprove than a sex charge, particularly if made by a young child. *People v. Hurlburt*, 166 Cal.App.2d 334, 333 P.2d 82, 85 (1958). From the very character of the offense involved the jury often has very little to go on in such cases. They may have nothing more than the testimony of a young child and the denials of the defendant. *Id.* at 87–88. We hold that the separate allegations of sexual misconduct made by the boy are not collateral to the main issue at trial. The boy's separate allegations, if proved false, would cast doubt on the complainant's credibility. *Thomas v. State*, 669 S.W.2d at 423. First, it would cast doubt on the boy's initial testimony corroborating the complainant's testimony. With the support of such corroboration removed, complainant's testimony might be received differently by the jury. Second, the falsity of the boy's allegations, if shown, would reduce the probability that the proximity of appellant to the complainant, his opportunities to be alone with her, and his paternal control over her enabled or prompted him to rape her, since all these enabling factors existed in connection with the stepson also.

█ Finally, the falsity of the boy's allegations, if proved, would be admissible as indirect evidence of appellant's good character. An accused is allowed to introduce evidence of a specific good character trait to show that it is improbable he committed the offense charged, where that character trait is involved in the offense. *Thomas v. State* at p. 423. Since appellant would have been able to prove the falsity of related accusations as part of his case tending to establish his plea of innocence, the boy's allegations are not collateral and cross-examination on this matter should have been permitted. *Arechiga v. State*, 462 S.W.2d at p. 2. Appellant's fifth ground of error is sustained.

Appellant contends in his sixth ground of error that the court erred in not allowing him to cross-examine the father as to previous threats the father made against him and the defendant's wife. The theory of the case consistently advanced by appellant at trial was that the children's natural father had arranged for the children to make false accusations of sexual abuse against the appellant. In support of this theory he tried to develop a background of testimony from various witnesses showing that the father had a strong animosity against his ex-wife and against appellant. Much of the testimony appellant sought to introduce in connection with the stormy pattern of relations between the natural father and the appellant and his wife was allowed in. Testimony was allowed, for example, explaining that while prior to the allegations of sexual abuse being made, appellant's wife had had custody of the children, after the allegations were made, largely due to those allegations, the natural father gained custody of the children in contemporaneous litigation. Also, the children admitted on cross-examination that on several occasions they had told their mother that their father had forced them to make the allegations against the appellant.

Outside the presence of the jury, however, the father denied (on cross-examination) having made threats to "get even" with appellant and his wife for having taken him to court for failure to pay child support. He did admit that appellant and his wife obtained a judgment against him in a child support action. During this questioning the father also denied having made a previous allegation of sexual abuse

against appellant. The jury was not allowed to hear this exchange.

■ Great latitude should be allowed the accused to show a witness' bias or motive to falsify his testimony. *Carillo v. State*, 591 S.W.2d 876 (Tex.Crim.App.1979). It is also true, however, that the trial judge has discretion over the extent to which a witness may be cross-examined on a collateral issue. *Id.* We think that the trial judge acted within his discretion in ruling on the admissibility of this evidence. We therefore overrule this ground of error. On retrial, however, the court should not unduly restrict appellant's attempt to develop this testimony. It is an elementary axiom of the adversary system that a party "establishes his plea" by offering a theory, explanation, or analysis of the facts of the case different from that of his opponent. The State introduced the father as a witness whose motive for bringing the complainant to the police station after discovering her discharge was an honest belief that she had been violated. On retrial, appellant should be allowed to fully develop his own theory of the father's motivation. This theory appears to be "part of his case tending to establish his plea" that the accusations were engineered. *Arechiga v. State*, 462 S.W.2d 1, 2 (Tex.Crim.App.1971).

Appellant complains in his eight ground of error that the State withheld exculpatory evidence. Specifically he contends that the State withheld the prosecutor's file in cause number 361527 in which appellant was charged with the sexual abuse of his stepson, including the results of a medical examination of the boy conducted after he had accused appellant of sexually abusing him. Appellant further contends that these records would show that the results of the medical examination were inconsistent with the possibility that the boy had been sexually abused.

The sealed file we received with the record on appeal contains for the most part documents relating only to cause number 361526, which is the case before us now. A few documents relate to both cause numbers 361526 and 361527. The record does not contain any medical records of an examination of the boy. Obviously if such records existed and tended to exonerate appellant of the charges of sexual abuse of the boy brought in cause number 361527, they would form the backbone of appellant's cross-examination of the boy on retrial because we have held these charges to be material to this case in our discussion of ground of error five.

■ The facts to be considered upon a charge of prosecutorial suppression of evidence are: (1) suppression by the prosecution after a request by the defense; (2) of evidence favorable to the defense, (3) which is material to the case. *Vasquez v. State*, 654 S.W.2d 775, 778 (Tex.App.—Houston [1st Dist.] 1983, no pet). In this case the State's attorney twice denied in conferences at the bench that any medical records on the boy were in the State's possession. These denials are consistent with the State's belief, at trial and on appeal, that these records were not material to the main issue. We have no way of knowing whether such records exist, and if so, whether they have ever been in the possession of the state. Thus we can arrive at no determination whether the records in the boy's case have been suppressed by the State. *Vasquez.* We therefore overrule this ground of error. Since we have declared that evidence relating to the boy's separate allegations is material to the case, however, these records should be held subject to subpoena by the defendant on retrial of this case. TEX.CODE CRIM.PROC. art. 24.01 et seq. (Vernon Supp.1985).

The judgment of the trial court is reversed and the cause is remanded for a new trial.