**Rudolfo LOPEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–96–00343–CR.**

Court of Appeals of Texas, San Antonio.

Jan. 29, 1999.

Jacquelyn L. Snyder, Adkins, for appellant.

Steven C. Hilbig Criminal Dist. Atty., San Antonio, for appellee.

Sitting: TOM RICKHOFF, Justice ALMA L. LÓPEZ, Justice KAREN ANGELINI, Justice.

## OPINION

LOPEZ, Justice.

Rudolfo Lopez was convicted of aggravated sexual assault of a child and indecency with a child by contact. Punishment was assessed by the jury at twelve years in prison. Lopez appealed to this court, arguing that the trial court erred by excluding evidence that the twelve-year-old complainant, P.M., had made a prior false accusation of abuse by his mother. We reversed and remanded, holding that the trial court erred by excluding this evidence because it was relevant to P.M.'s credibility. *See Lopez v. State*, No. 04–96–00343–CR, 1997 WL 404268 (Tex.App.—San Antonio 1997) (unpublished).

On the State's petition for discretionary review, the court of criminal appeals vacated our opinion and remanded the cause to this court to address the State's argument that the evidence was inadmissible pursuant to Rule 608(b) of the Texas Rules of Criminal Evidence.[1] We hold that the trial court's application of 608(b) in this instance impermissibly conflicted with appellant's constitutional right of confrontation. We reverse the judgment of conviction and remand the case for a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

The complainant, who in 1992 was a twelve-year-old learning disabled student, appears to have endured a troubled childhood. Two years before making an outcry statement against Lopez, P.M. accused his mother of hitting him and throwing him against a "steel washer." A case worker with the Texas Department of Protective and Regulatory Services (TDPRS) investigated this accusation and filed a report. The case worker described P.M. as "very provocative and hard to handle," and had "the run of the house." She found that P.M. was unable to tell her what a "steel washer" was or where it was in his home, that P.M. did not have any injuries, and the incident was "ruled out." The report indicated that P.M. had trouble making and keeping friends because he refused to bathe and because he lied to them. He "is constantly making up stories." The case worker recommended that the case be closed.[2]

P.M. testified at trial that, while living with his father the following year, he and Lopez engaged in various sexual acts. On cross-examination, Lopez's attorney attempted to impeach P.M.'s credibility by asking him if he ever lied about "big things." P.M. responded that he did not. Counsel then began to question P.M. about the TDPRS report, and the State objected. After an off-the-record bench conference, counsel changed the line of questioning. The court later stated that the report was irrelevant. Lopez's attorney made a bill of exception, explaining that she had intended to elicit some statements in the report and to impeach P.M. with a prior inconsistent statement, specifically, his prior accusation about his mother.

The jury heard testimony given by Lopez's wife, Rosie, about their relationship with each other and with P.M. Lopez met his future wife in April of 1992 while he was living with P.M.'s father. Lopez began living with Rosie in August of that year and they married on January 1, 1993, and moved to Dallas at the end of February 1993. Rosie testified that during this time she had many occasions to observe J.M's mistreatment and neglect of his son, that she frequently admonished J.M. for this maltreatment, including the inappropriate sex education he gave his own son. Rosie and Rudolfo Lopez frequently took care of P.M. Under cross-examination, Rosie stated:

What I am suggesting was, that Paul, during our conversations, would come to me and tell me that he wanted—he—was—he hated Joe so much he wanted to leave. He didn't want to live with [his father] or [his mother]. When he got to know me and my sons and got to be a part of the relationship that Rudy and I had, he asked for me and Rudy to adopt him. When I told him that we couldn't adopt him, he was very upset.

So that, my opinion is, that when Rudy and I left to Dallas, he felt that the only people that had taken the time to talk to him and give him any type of attention were deserting him.

Rosie also testified that, in her opinion, P.M. was an abused child, but that she did not believe her husband was the abuser.

---

1. Since this case was remanded, our state civil and criminal rules of evidence have merged into one set of rules adopted by both the Texas Supreme Court and Texas Court of Criminal Appeals, effective March 1, 1998. *See* TEXAS RULES OF EVIDENCE, 61 TEXAS BAR JOURNAL 373 (APRIL 1998). The language of Rule 608(b) remains unchanged.

2. This recommendation is based in part on the case worker's conclusion that there was no corroborative evidence of physical abuse and also because P.M.'s mother was very cooperative in seeking counseling to help her deal with P.M.'s behavior.

## RULE 608(b)

■ Lopez argues that the trial court erred by excluding evidence regarding P.M.'s prior accusation against his mother because it was relevant to P.M.'s credibility. The State counters that even if the evidence was relevant, it was inadmissible under Texas Rule of Criminal Evidence 608(b).

Rule 608(b) provided that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." Lopez argues that P.M.'s prior accusation against his mother was false and should have been considered by the jury in determining whether his accusation against Lopez was also false. However, P.M.'s prior accusation against his mother could be considered by the fact finder to be a "specific instance" of the witness (P.M.) lying, and it was offered "for the purpose of attacking ... his credibility." Therefore, under the express terms of Texas Rule of Criminal Evidence 608(b), the prior accusation may not be inquired into on cross-examination nor proven by extrinsic evidence. *See Gonzales v. State*, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd); *Ruiz v. State*, 891 S.W.2d 302, 306 (Tex.App.—San Antonio 1994, pet. ref'd); *Ramirez v. State*, 830 S.W.2d 827, 828–29 (Tex.App.—Corpus Christi 1992, no pet.).

Rule 608(b) is substantially similar to Rule 608(b) of the Federal Rules of Evidence. But the federal rule contains an exception that is relevant here. It provides that specific instances of the conduct of a witness may, "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning the witness' character for truthfulness or untruthfulness...." FED.R.EVID. 608(b)(1); *see United States v. Reid*, 634 F.2d 469, 473–74 (9th Cir.1980) (Federal Rule 608(b)(1) authorized cross-examination of a defendant regarding his prior false statements for the purpose of attacking his credibility). The court of criminal appeals has noted that in adopting Rule 608(b), it did not adopt the exceptions provided by the federal

rule. *See Ramirez v. State*, 802 S.W.2d 674, 676 (Tex.Crim.App.1990). Instead, the Texas version of Rule 608(b) is described as very restrictive, allowing no exceptions. *See id.* Nevertheless, a concurring justice noted that the common law general rule regarding impeachment on a collateral matter survives the adoption of Rule 608(b). Justice Miller pointed to Rule 607, which allows the credibility of a witness to be impeached by any party, as a vehicle by which one may correct a false impression made by a witness by utilizing a specific instance of that witness's conduct. *See id.* at 677 (Miller, J., concurring). There is an additional exception to the restrictive reading of Rule 608(b) under Rule 613(b) where "cross-examination about matters that are relevant to showing that the witness has a bias, interest or motive to testify untruthfully," are permitted. *See* HELEN D. WENDORF, DAVID A. SCHLUETER, AND ROBERT R. BARTON, TEXAS RULES OF EVIDENCE MANUAL, Rule 608, at VI–41 (5th ed.1998); TEX.R. EVID. 613(b) (formerly TEX. R.CRIM. EVID. 612(b)); *Carroll v. State*, 916 S.W.2d 494, 500–01 (Tex.Crim.App.1996).

Since the adoption of the former Texas Rules of Criminal Evidence in 1987, at least two courts have indicated that evidence that a complainant has previously made false accusations is admissible to demonstrate the falsity of the accusation at issue. *See Lape v. State*, 893 S.W.2d 949, 955–56 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *Hughes v. State*, 850 S.W.2d 260, 262–63 (Tex.App.—Fort Worth 1993, pet. ref'd). Neither court attempted to reconcile the admission of this evidence with Rule 608(b). The *Hughes* Court indicated, however, that the evidence would be admissible if the defendant established that it demonstrated interest, bias, or motive to testify falsely. *See* 850 S.W.2d at 263 (citing *Moody v. State*, 827 S.W.2d 875, 891 (Tex.Crim.App.1992)). In *Moody*, the court drew an apparent distinction between evidence merely attacking a witness's character for truthfulness and evidence showing that the witness had a motive or bias that would cause him to lie. *See* 827 S.W.2d at 891. The court concluded that if the evidence would show bias or motive by the witness against the defendant, the evi-

dence should be admitted pursuant to the constitutional right of confrontation. *See id.; see also Carroll v. State,* 916 S.W.2d 494, 501 (Tex.Crim.App.1996); *Driggers v. State,* 940 S.W.2d 699, 708 (Tex.App.—Texarkana 1996, pet. ref'd); *Gonzales,* 929 S.W.2d at 549. Lopez argues only that P.M.'s prior false accusations are relevant to his character for truthfulness and he does not assert any infringement of his constitutional right of confrontation. Nevertheless, we have an obligation to construe Rule 608(b) consistently with the Constitution.

## THE RIGHT OF CONFRONTATION

The right of confrontation, arising from the Confrontation Clause of the United States Constitution, secures one's right of cross-examination. U.S. CONST. amend. VI; *see Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (right of confrontation exists for state as well as federal criminal defendants). "The central concern of the Confrontation Clause [of the Sixth Amendment] is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 844–46, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Indeed, it is primarily through cross-examination that the defendant has the opportunity to bring out facts which would tend to discredit a witness "by showing that his testimony was untrue or biased." *See Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 75 L.Ed. 624 (1931). This is so fundamental and essential to providing a fair trial, that it overrides other important state policies. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). In *Davis,* the Court

found that the State's interest in the confidentiality of juvenile proceedings was outweighed by the criminal defendant's right to cross-examine a juvenile witness about the effect of probationary status on his testimony. The trial court's effort to limit the scope of this cross-examination concerning a witness's juvenile record violated the Sixth Amendment. *See Davis v. Alaska,* 415 U.S. at 320, 94 S.Ct. 1105.

The Confrontation Clause reflects a preference for face-to-face confrontation at trial, but that preference occasionally gives way to considerations of public policy and the necessities of the case. *See Craig,* 497 U.S. at 848–49, 110 S.Ct. 3157. In such cases, a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only when denial of such confrontation is necessary to further an important public policy and the reliability of the testimony is otherwise assured. *Id.* at 849–51, 110 S.Ct. 3157. In particular, "if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id.* at 855, 110 S.Ct. 3157 [3]; *Lively v. State,* 968 S.W.2d 363, 366–67 (Tex. Crim.App.1998). In this case, it does not appear that the trial court was confronted with an objection to face-to-face confrontation. The complaining witness was sixteen at the time of trial and has since reached the age of majority.

■ The constitutional right of confrontation is violated when appropriate cross-

**3.** The Supreme Court found no Sixth Amendment violation in the closed-circuit examination of a child witness "if. the trial court determines that (1) the use of the procedure is necessary to protect the welfare of the particular child witness who seeks to testify; (2) the child witness would be traumatized by the presence of the defendant; and (3) the trauma would be more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify. *Maryland v. Craig,* 497 U.S. at 857–59, 110 S.Ct. 3157. *See Hightower v. State,* 822 S.W.2d 48, 51 (Tex.Crim.

App.1991); *Gonzales v. State,* 818 S.W.2d 756, 760–762 (Tex.Crim.App.1991). The requisite reliability of the child witness' testimony may be assured absent a face-to-face encounter through the combined effect of the witness's testimony under oath (or other admonishment, appropriate to the child's age and maturity, to testify truthfully), subject to cross-examination, and the factfinder's ability to observe the witness's demeanor, even if only on a video monitor. *See Craig, supra.*

examination is limited. *See Hurd v. State,* 725 S.W.2d 249, 252 (Tex.Crim.App.1987). The scope of appropriate cross-examination is necessarily broad. A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias or interest for the witness to testify. *Lewis v. State,* 815 S.W.2d 560, 565 (Tex. Crim.App.1991). When discussing the breadth of that scope the court of criminal appeals has held,

> Evidence to show bias or interest of a witness in a cause covers a wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite. The rule encompasses all facts and circumstances, which when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only.

*Jackson v. State,* 482 S.W.2d 864, 868 (Tex. Crim.App.1972) (quoting *Aetna Insurance Company v. Paddock,* 301 F.2d 807, 812 (5th Cir.1962)).

■ Appellant's defense in this case alleged that the complainant lied, either about being abused, or if abused, about who the perpetrator was, and that, as a neglected child, he lied to get attention. The trial court prevented appellant's counsel from questioning the complainant about a prior accusation of physical abuse lodged against his mother which TDPRS had investigated and ruled out in 1991. Complainant's sexual abuse claims were lodged in April of 1993 alleging incidents beginning in December of 1992. Appellant argues that this line of questioning was appropriate because it was laying a foundation to bring forward evidence of the witness's prior false accusation. *See Hughes v. State,* 850 S.W.2d 260, 262–63 (Tex.App.—Fort Worth 1993, pet. ref'd). In *Hughes,* the trial court excluded evidence of prior and subsequent accusations of sexual assault because neither had been established as false. *Id.* at 262. The court noted that both of these accusations were merely that: the first accused had died in jail while awaiting trial, the subsequent accusation was still

under investigation. The appellant's counsel conceded that there was no evidence as to the truth or falsity of these allegations. *Id.* at 262. The appellate court upheld this ruling, surmising that the appellant merely wanted the jury to be able to "draw the inference that the complainant had cried wolf." Had there been any "showing of falsity," the other two accusations would have been admissible as showing interest, bias, or motive. *Id.* at 263. In the case at bar, the excluded report contains some evidence that the accusation against P.M.'s mother could be considered false. The report itself would have been helpful to the jury, when coupled with the testimony of Appellant's wife, in determining whether P.M. had any motive or interest in making a false accusation against the Appellant.

The State disagrees with this analysis because two of the three intermediate appellate opinions *Hughes* relies upon were issued prior to the adoption of the former rules of criminal evidence. *See Rushton v. State,* 695 S.W.2d 591, 594 (Tex.App.—Corpus Christi 1985, no pet.); *Polvado v. State,* 689 S.W.2d 945, 950 (Tex.App.—Houston [14th Dist.] 1985, pet ref'd); *Thomas v. State,* 669 S.W.2d 420, 423 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). Nevertheless, both parties seek reliance in *Lape v. State* which, in turn, cited persuasively to *Hughes. See Lape v. State,* 893 S.W.2d 949, 957 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). In *Lape,* the defense sought to elicit testimony that the mother of the alleged victim of child molestation had previously brought false charges of child abuse against the defendant. The appellate court found it highly relevant, and admissible under Rule 609(a)[4], that the mother had been convicted of making a false police report, a misdemeanor. But the court also found that the trial court had erred in not allowing further cross-examination into the details behind that prior conviction to show bias and motive. "While the general rule is a good one, in this case it prevented the appellant from present[ing] evidence crucial to his defense. His defense in this case and the details behind Felicia Lape's convic-

---

4. The prior misdemeanor conviction came under Rule 609(a) because lying to a police officer is a crime of moral turpitude in that it involves dishonesty. *Lape v. State,* 893 S.W.2d at 958.

tion in 1986 are too similar to be ignored and the jury was entitled to hear the evidence." *Lape v. State*, 893 S.W.2d 949, 958 (Tex. App.—Houston [14th Dist.] 1994, pet ref'd). The prior physical abuse claim of P.M., investigated and "ruled out" by a state agency investigator, while not carrying the full weight of a judicial determination, clearly shows a tendency on the part of the witness to make up damaging stories about others. The motive Lape sought to establish against the witness was her attempts to win custody of her son from him. In the case at bar, the motive, as presented through the testimony of appellant's wife, appears to be P.M.'s efforts to get attention and his jealousy over appellant's recent marriage and a corresponding loss of attention.

The court in *Lape*, however, also upheld a ruling sustaining the State's objection to questions to the mother about specific instances in which she had stated that her daughter (the complainant) had been untruthful. The court seemed unwilling to permit such testimony under rule 608 unless it was somehow tied to Rule 609. *See id.*, 893 S.W.2d at 959. The mother was permitted to testify to her child's reputation for untruthfulness, although not the specific details of such incidents. *See id.*; TEX.R. EVID. 608(a).

■■ When the witness is the complainant himself, we think the trial court must be particularly vigilant in securing the accused's right of confrontation.[5] In *Lape*, the Rule 608(b) analysis concerned the mother of the accuser, (albeit she was shown to have her own motives for lying). In both *Hughes* and in the case at bar, the candidate for impeachment was the accuser. The jury has the benefit we do not have of focusing on the accuser on the witness stand, his demeanor is observable. How the accuser addresses questions probing similar prior false accusations would be extremely helpful to the jury in determining interest, motive or bias. To the extent Rule 608(b) would prevent the

appellant from confronting his accuser in this manner, the Rule must bow to the Constitution. U.S. CONST. art. VI, cl. 2; *Carroll v. State*, 916 S.W.2d 494, 501 (Tex.Crim.App. 1996).

■ We, therefore, again conclude that the trial court erred when it did not permit appellant to introduce evidence about a prior false accusation. As we stated in our previous opinion, we cannot say beyond a reasonable doubt that the error made no contribution to the conviction. Lopez's entire defense was based on P.M.'s lack of veracity and motives to lie. The jury did not know about P.M.'s emotional problems and how they had earlier manifested themselves in an accusation against his mother that was judged to be unfounded. If the jury had heard this evidence or seen the report, it could have viewed P.M.'s testimony differently and may have reached a different result.

Appellant's first point of error is sustained and we do not find it necessary to further consider his other point of error. For the reasons stated herein, the judgment of the trial court is reversed and the case is remanded for a new trial.

Dissenting opinion by: KAREN ANGELINI, Justice.

ANGELINI, Justice, dissenting.

I respectfully dissent. The evidence regarding P.M.'s prior accusation of abuse against his mother was properly excluded under Rule 608(b).

Rule 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime ..., may not be inquired into on cross examination of the witness nor proved by extrinsic evidence." The Court of Criminal Appeals has held that this rule is "very restrictive and

---

5. The trial court has considerable discretion in this area. Appellant's right to cross-examine witnesses is broad. Nevertheless, we are cognizant of the "trial court's authority to preclude, among other things, confusion of the issues, harassment, endangerment to the witness, needless delay, and the admissibility of highly prejudicial, repetitive and irrelevant or marginally relevant evidence." But when a trial court uses this authority to infringe on the accused's right of confrontation, there is an abuse of discretion. *See Rodriquez v. State*, 934 S.W.2d 881, 885 (Tex.App.—Waco 1996, no pet.).

allows for no exceptions." *See Moody v. State,* 827 S.W.2d 875, 891 (Tex.Crim.App. 1992). The Court in *Moody,* however, indicated that "constitutional considerations are of some import to this issue." *Id.* More recently, the Court has recognized that if a conflict between Rule 608(b) and the right to cross examine a witness exists, the constitutional right of confrontation would prevail. *See Carroll v. State,* 916 S.W.2d 494, 501(Tex.Crim.App.1996). It is this constitutional right to confrontation analysis that the majority opinion relies on. I do not believe this analysis applies to this case however.

The majority recognizes that the Court of Criminal Appeals in *Moody* "drew an apparent distinction between evidence merely attacking a witness's character for truthfulness and evidence showing that the witness had a motive or bias that would cause him to lie." The majority then properly states that the Court in *Moody* concluded, and later reaffirmed in *Carroll,* that if the evidence would show bias or motive by the witness against the defendant, the evidence should be admitted pursuant to the constitutional right to confrontation. Thus, it is clear that evidence that is excludable under Rule 608(b) is, nevertheless, admissible if it shows bias or motive by the witness to lie but is not admissible if it is merely for the purpose of attacking a witness's character for truthfulness. *See Gonzales v. State,* 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd) (stating that greater latitude is granted to prove a witness's bias than to prove a witness's untruthful character). Therefore, whether the evidence of P.M.'s prior accusation of abuse against his mother was improperly excluded depends upon whether it tended to prove he was biased or motivated to lie when he testified against the appellant or whether it merely showed an untruthful character.

Lopez attempted to prove that P.M. had made a false accusation of abuse on a prior occasion. This was an obvious attempt to use a specific act of conduct to impeach P.M.'s character for truthfulness and not to show P.M.'s bias or motive to lie. The most it would prove is that P.M. had made a prior accusation of abuse against his mother and that the TDPRS investigator had "ruled out"

the incident. The majority concludes that the TDPRS report concerning P.M.'s prior allegation against his mother "could have been helpful to the jury, when coupled with the testimony of Appellant's wife in determining whether P.M. had any motive or interest in making a false accusation against Appellant." I disagree. The evidence would merely show the complainant had made a prior allegation that was apparently not true—not that he had a bias *in this case* against *this defendant* or a motive to lie *in this case* against *this defendant.* The majority states the "motive" in this case "appears to be P.M.'s efforts to get attention and his jealousy over Appellant's recent marriage and a corresponding loss of attention." That evidence did come in through Appellant's wife, but had nothing to do with the complainant's prior accusations of abuse against his mother.

I conclude that the evidence was properly excluded under Rule 608(b) and, therefore, I dissent.