# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-99-00525-CR

**Charles Jerome Brent, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 0992891, HONORABLE FRED A. MOORE, JUDGE PRESIDING

A jury found appellant Charles Jerome Brent[1] guilty of the offenses of aggravated sexual assault of a child and indecency with a child by contact. Tex. Penal Code Ann. §§ 22.021(a)(1)(B), 21.11 (West Supp. 2001). The jury assessed punishment at confinement for ten years for each offense and recommended that imposition of the sentences be suspended and appellant placed on community supervision. The district court ordered that appellant be placed on community supervision and, as a condition, ordered that he serve 180 days in the Travis County jail. Appellant contends that the district court erred by excluding certain evidence and by enying his motion for mistrial. We will modify the judgment and affirm the judgment as modified.

---

[1] Although the district court's judgment is styled "*The State of Texas v. Charles Andre Brent*," the body of the judgment, the indictment, and all other portions of the record refer to appellant as "Charles Jerome Brent." We will modify the style of the judgment to reflect the correct name, Charles Jerome Brent.

Between February and May 1997, the complainant, who was eleven-years-old at the time, testified that she would from time to time babysit for appellant's children and clean his house. On various occasions while the complainant was at appellant's house, appellant would either rub his hands on her genitals over her clothes, pull her pants down and perform oral sex on her, or place his finger in her vagina. The complainant testified that on one occasion appellant tried to get her to perform oral sex on him but she refused. The complainant explained that she continued to return to appellant's house despite his actions because he supplied her with cigarettes, marihuana, and alcohol and threatened to stop giving her these items if she told anyone about his sexual acts with her. Sometime in May 1997, the complainant could no longer keep appellant's actions secret. The complainant told her older sister about appellant's actions and her sister told their parents. Soon afterward, the complainant told her mother about the incidents.

On cross-examination, the complainant's mother testified outside the jury's presence that ten years earlier the complainant's older sister had told her that she had been sexually assaulted.[2] The complainant's mother testified that the complainant had known about her sister's sexual assault for quite some time before telling her sister that she too had been sexually assaulted. The mother also testified that there was some sibling rivalry and jealousy between the two sisters.

Ann McElhaney, a psychotherapist and licensed professional counselor who often works with sexually abused children, testified that in September 1997 she began counseling the complainant. McElhaney stated that the complainant believed her sister received preferential treatment at home. She further testified that a child who believed that a sibling was receiving special treatment might try to emulate that sibling and do things that the sibling may have done in the past

---

[2] Appellant was not the older sister's assailant.

to get more attention from her parents. After McElhaney completed her testimony, appellant made the following request outside of the jury's presence:

> In light of the additional developments[,] for the record I wanted to renew my request that I be permitted to question [the complainant's mother] in the presence of the jury about the sexual abuse allegations made by the complainant's older sister.
>
> The court will recall that Ms. McElhaney in testifying on cross examination testified that in her year and a-half counseling with [the complainant] she discovered that [the complainant] believed that her sister received preferential treatment at home. And she also testified and agreed . . . that a child who has those kind of feelings towards a sibling might well emulate or try to do some of the same things that a sibling had done in the past in an effort to gain the same kind of attention.
>
> So I would suggest to the Court that there's another set of circumstances in the record that clearly demonstrates the relevancy not only of the sexual, that [the older sister] had made a sexual allegation, but that the allegation that she made was the same kind of sexual allegation that was initially made by this complainant. And it would be evidence, we suggest to the Court, that is relevant to the defensive theory in this case. And, that is, that the allegations by the complainant are not true, but are in fact fabricated or matters of fantasy. And we would again reurge our request that I be permitted to question [the complainant's mother] about that matter.

The district court again sustained the State's objection to appellant's request.

Appellant contends that the district court erred by not allowing him to question the complainant's mother about the complainant's sister's sexual assault that occurred approximately ten years earlier. Appellant contends that the evidence elicited from the complainant's mother outside the jury's presence showed the older sister's allegation of sexual assault ten years earlier was similar to the allegations made by the complainant. Appellant's theory, which he contends he was not allowed to explore due to the district court's ruling, was that because the complainant knew about her sister's sexual assault and believed that her sister received preferential treatment at home, she fabricated a similar allegation against appellant in hopes of gaining attention. Appellant contends that

3

evidence regarding the older sister's sexual assault was relevant and that he should have been allowed to develop his defensive theory that the complainant adopted her sister's sexual assault story and fabricated the allegations of appellant's sexual acts against her in hopes of obtaining preferential treatment at home.

Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Tex. R. Evid. 401. The trial court is given broad discretion in determining admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). The trial court's ruling will not be disturbed on appeal absent an abuse of discretion. *Id.* A trial court does not abuse its discretion so long as its ruling is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Appellant argues that the facts here are similar to those in *Polvado v. State*, 689 S.W.2d 945 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). In *Polvado*, also a case involving a sexual assault of a child, the defense attempted to introduce certain accusations made by the complainant's brother that he too had been sexually assaulted by the defendant and evidence that his accusations had, prior to trial, been proved to be unfounded. *Id.* at 947. The brother's accusations occurred at about the same time the complainant first told her natural father and his wife about the sexual acts the defendant had allegedly done to her. *Id.* In *Polvado*, the defendant was the children's stepfather. Introduced as evidence were videotapes of the children stating that no sexual offenses had occurred, their stepfather had done nothing to them, and that their natural father forced them to make the sexual assault accusations against their stepfather. *Id.* at 948. Then at trial, each child testified about the tapes, both admitted making them, but both claimed that their mother had forced them to

4

make the tapes. *Id.* The court of appeals ruled that the trial court improperly excluded evidence that the complainant's brother had also accused the defendant of sexual assault as well as evidence that his accusations were proved untrue. *Id.* at 949.

The facts in the case before us are distinguishable from those in *Polvado*. Here, the complainant's outcry occurred ten years after her sister's sexual assault and involved a different perpetrator. Additionally, here the complainant's mother testified outside the jury's presence that she did not recall telling the complainant any details of her sister's sexual assault and believed she would not have done so.[3] The complainant's mother also testified that the complainant's sister had no recollection of being sexually assaulted and therefore could not have provided the complainant with any details of her sexual assault. Additionally, there is no direct testimony from the complainant that she knew the details of her sister's sexual assault. Also, although one of the sexual acts reported by the complainant to her mother was the same type of sexual act perpetrated against her sister ten years earlier, the complainant also described other sexual acts perpetrated against her. Finally, there was no evidence submitted by the complainant that she believed her sister received special treatment because she had been sexually assaulted. The circumstances that merited reversal in *Polvado* are not present in this case.

Additionally, appellant argues that based on this Court's opinion in *Morton v. State*, 761 S.W.2d 876 (Tex. App.—Austin 1988, pet. ref'd), appellant should have been allowed to develop his defensive theory that the complainant adopted the sexual assault story of her sister.

---

[3] Ten years previously, the complainant's mother testified that the complainant's older sister had come to her and told her that she had been sexually assaulted when the perpetrator placed his finger inside her vagina.

In *Morton*, the defendant was tried for murdering his wife after he staged a burglary to hide the murder. *Id.* The trial court allowed the State to admit portions of a videotape the defendant rented the night of the murder. *Id.* at 880. The sexually explicit tape showed an encounter between a woman and a burglar. *Id.* The State's theory was that the defendant and his wife had argued about sex, that he murdered her in a fit of sexual frustration and anger, and that he staged a burglary to cover the murder similar to what was shown in the video. *Id.* at 887. The trial court held that the videotape was some evidence of the defendant's sexual frustration and of his covering up the murder as a burglary. *Id.* at 881.

Appellant argues that *Morton* is instructive here because, as in that case, a person was aware of a scenario and allegedly fabricated a story similar to that scenario. Appellant argues that the complainant was aware that her sister had been sexually assaulted in a particular manner and that the complainant fabricated a similar scenario accusing appellant. We disagree that *Morton* is applicable in this case.

First, there is no testimony that the complainant was aware of the details of her sister's sexual assault. The complainant's mother stated she did not recall telling the complainant any details of the assault and believed that she would not have done so. Further, the complainant's mother stated that the complainant's sister did not have any recollection of the assault. Also, while the complainant described a sexual act similar to the one her sister had described ten years earlier, the complainant also described several other sexual acts appellant committed that were not described by her sister. Finally, appellant was not restricted in his cross-examination of the complainant regarding her motives.

6

We hold that the district court did not abuse its discretion in excluding evidence of the sexual assault against the complainant's older sister.  Issue one is overruled.

In his second issue, appellant contends that the district court erred in denying his motion for mistrial after an Austin Police Officer testified that he reviewed appellant's criminal history while investigating the incident.

At trial, during its case in chief, the State called Austin Police Officer Rick Blackmore who testified that in May 1997 he was a member of the Child Abuse Unit.  During questioning about his involvement with the case, the State asked him about his preliminary steps in investigating this case.  He said that after he was given the name of appellant as a suspect, he determined his address. When asked by the State what he did next, Officer Blackmore responded, "I believe I reviewed his criminal history."  Appellant immediately asked to take up a matter outside of the jury's presence. At the bench out of the jury's hearing, appellant objected to Officer Blackmore's response.  The district court sustained the objection after which appellant asked the court to instruct the jury to disregard the comment.  Appellant also moved for a mistrial.  The district court instructed the jury to disregard the officer's response and overruled the motion for a mistrial.

In a case where improper testimony is presented, it is presumed that an instruction to disregard the testimony will be obeyed.  *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987).  This presumption is based on "faith in the jury's ability, upon instruction, consciously to recognize the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations."  *Id.*  An instruction to disregard will cure the error, "except in extreme cases where it appears that the . . . evidence is clearly calculated to inflame the minds of the jury and is of such a

character as to suggest the impossibility of withdrawing the impression produced on their minds." *Id.* (quoting *Campos v. State*, 589 S.W.2d 424, 428 (Tex. Crim. App. 1979)).

In this case, an investigator made a comment about reviewing appellant's criminal history, and the jury was promptly instructed to disregard. No specific offenses were mentioned. We hold that the response was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard his comment. *See Gardner*, 730 S.W.2d at 697 (instruction sufficient to cure any error from witness's testimony regarding defendant's prior incarceration in penitentiary); *Long v. State*, 820 S.W.2d 888, 894 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (instruction sufficient to cure any error from defendant's statement he previously killed other people). Issue two is overruled.

The judgment is modified and affirmed as modified.

Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Modified and, as Modified, Affirmed

Filed: February 15, 2001

Do Not Publish