**Rickey Lee HUGHES, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–316–CR.**

Court of Appeals of Texas, Fort Worth.

March 30, 1993.

Ward Casey, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Susan Ayres, Asst. Dist. Atty., Fort Worth, for the State.

Before LATTIMORE, WEAVER and HOPKINS (Retired), JJ., Sitting by Assignment.

## OPINION

WEAVER, Justice.

Rickey Lee Hughes was convicted by a jury of the offense of aggravated sexual assault of a child. *See* TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon 1989). The jury found the enhancement and habitual offender allegations to be true, and assessed punishment at confinement for

life in the Institutional Division of the Texas Department of Criminal Justice. In two points of error, appellant alleges that his constitutional right to confrontation was violated and that *Batson* error was committed by the State in its exercise of peremptory challenges during jury selection.

We affirm.

## CONFRONTATION CLAUSE

Appellant's first point of error asserts that appellant was denied his sixth amendment right to confrontation because he was not allowed to cross-examine the complainant's mother and the State's expert witness about the complainant's allegations of sexual abuse by two men other than the appellant. According to the evidence presented in appellant's bill of exceptions, two years before the alleged sexual assault by appellant, the complainant's cousin, the complainant had accused J.W. Krendall of fondling her. Mr. Krendall died in jail awaiting trial, so the allegations against him were never proven. Two years after the alleged sexual assault by the appellant and one month before the appellant's trial, the complainant accused another cousin, Marcus Hughes, of sexually assaulting her. Marcus Hughes was being investigated by the Department of Human Services at the time of appellant's trial. Nothing in the record indicates whether the allegations against either J.W. Krendall or Marcus Hughes were true or false.

Procedurally, the trial court sustained the State's motion in limine to exclude the mention of the past or present sexual history of any of the State's witnesses until such evidence was shown to be relevant outside the presence of the jury. Following the State's examination of the complainant's mother, the trial court conducted an in-camera hearing during which appellant's attorney cross-examined the mother about her daughter's allegations of sexual assault by J.W. Krendall and Marcus Hughes. After the State's redirect-examination, the trial court inquired as to whether these other allegations were true or false. Appellant's attorney admitted to the trial court that there was no evidence as to the truth or falsity of the complainant's allegations against J.W. Krendall and Marcus Hughes. The trial court then sustained the State's objections to the admission of evidence pertaining to the complainant's allegations of sexual assault by persons other than the appellant. The appellant's attorney again urged the trial court to admit this evidence during his cross-examination of the State's expert witness who testified outside the presence of the jury that multiple allegations of sexual abuse by different persons would be one factor to consider in weighing a child's credibility. The trial court again ruled the evidence inadmissible.

■ Appellant asserts on appeal that the exclusion of this evidence violated his Sixth Amendment right to fully cross-examine the witnesses testifying against him. *See* U.S. CONST. amend. VI. *See also Evans v. State*, 519 S.W.2d 868, 871–72 (Tex.Crim. App.1975); *Chew v. State*, 804 S.W.2d 633, 635 (Tex.App.—San Antonio 1991, pet. ref'd). A criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of a witness and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness. *Olden v. Kentucky*, 488 U.S. 227, 231, 109 S.Ct. 480, 483, 102 L.Ed.2d 513, 519 (1988).

■ Our analysis, therefore, hinges on a determination of whether the excluded evidence was the subject of appropriate cross-examination. Appellant sought to introduce evidence of the complainant's allegations against men other than the appellant in an attempt to impeach her credibility. Such impeachment evidence would clearly have been admissible had the record contained any evidence that the other allegations were false. *Rushton v. State*, 695 S.W.2d 591, 594 (Tex.App.—Corpus Christi 1985, no pet.); *Polvado v. State*, 689 S.W.2d 945, 950 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd); *Thomas v. State*, 669 S.W.2d 420, 423 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). When there is

no evidence that the complainant made false accusations, any evidence concerning the accusations is inadmissible. *Rushton,* 695 S.W.2d at 594. The appellant apparently wanted the jury to hear the excluded evidence so that they could draw the inference that the complainant had cried wolf. Without a showing of falsity as to the other two accusations, however, the excluded evidence does not establish a motive for the complainant to lie in the case at bar. *See id.* Since appellant failed to establish that the excluded evidence would have shown an interest, bias, or motive, he did not demonstrate that the excluded evidence was a proper subject for cross-examination. *See Moody v. State,* 827 S.W.2d 875, 891 (Tex.Crim.App.), *cert. denied,* — U.S. ——, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992).

■ Appellant asserts that the State opened the door to the admission of the complainant's allegations against other men during its direct examination of its expert witness, Sharon McLaughlin. Appellant's attorney cross-examined the complaining child witness and that cross-examination disclosed several inconsistencies in the child's testimony. Thereafter, the State sought to explain those inconsistencies to the jury through the testimony of Sharon McLaughlin, an expert witness in child sexual abuse. McLaughlin listed several factors she would consider in evaluating the credibility of child witnesses in sexual assault situations. Those factors were that it is difficult for children to remember dates; that it is embarrassing for children to report sexual abuse; that it is common for a child to wait a period of time before reporting sexual abuse; that it is typical for more of the story to be revealed as one develops a relationship with the child; and that children are not "inclined to make up these things." All of those factors supported the credibility of the complainant in this case. Outside the presence of the jury, McLaughlin admitted that another factor she would consider would be whether the child had made similar allegations of sexual assault against other persons. Appellant asserts that this excluded evidence is admissible pursuant to the rule of optional completeness in order to fully explain

McLaughlin's testimony regarding the credibility of the child witness. *See* Tex. R.Crim.Evid. 107. We agree. Once a matter is injected into the proceeding, evidence to fully explain the matter is relevant and admissible, even though the evidence might not otherwise be admissible. *Parr v. State,* 557 S.W.2d 99, 102 (Tex.Crim.App. 1977). By allowing the State's expert witness to state the factors to be considered in evaluating the credibility of the child witness, the State opened the door for appellant to complete the listing of those factors. *See Hernandez v. State,* 805 S.W.2d 409, 412 (Tex.Crim.App.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *Lucas v. State,* 791 S.W.2d 35, 53– 54 (Tex.Crim.App.1989). Without a showing that those accusations were false, however, the excluded factor becomes irrelevant to an evaluation of the child's credibility. Therefore, any error committed by the trial court in disallowing appellant from listing this additional factor was harmless.

■ Appellant also asserts that the excluded evidence was admissible pursuant to the rule of optional completeness on the issue of whether the appellant was solely responsible for the psychological harm experienced by the complainant. This issue was raised at both the guilt/innocence and punishment phases of the trial.

At the guilt/innocence phase of the trial, the mother testified that the complainant was upset and screaming during a hospital examination by a male doctor two days after appellant allegedly assaulted her. Outside the presence of the jury, the mother testified to the child's accusation that she had previously been sexually assaulted by someone other than the appellant. The trial court overruled appellant's request to admit this proffered evidence. Appellant argues that without the excluded evidence, the jury could only conclude that the child's emotional state during the hospital examination was caused solely by appellant's assault on the child.

During the punishment phase of the trial, the State emphasized the victim's emotional scars and asked the jury to punish

the appellant for the victim's suffering. The appellant again reurged his request to admit evidence of the child's sexual assault accusations against others which had been excluded in the guilt/innocence phase of trial. Appellant argued that without the excluded evidence, the jury was left with the impression that any suffering experienced by the child was caused by the appellant alone. The trial court again ruled that the evidence was inadmissible. On appeal, appellant asserts that by creating the impression that the harm inflicted upon the complainant was attributable only to the acts of the appellant, the State paved the way for appellant to rebut that impression with evidence that others may have been responsible for all or part of the harm.

The excluded evidence would be probative on the harm issue only if appellant could show that the complainant's accusations against other men were true. As previously discussed, the record is void of any proof as to whether the accusations were either true or false. Without a showing of the truth of the complainant's allegations against men other than the appellant, evidence of those accusations was inadmissible to show that someone other than appellant was partially responsible for the psychological harm experienced by the child complainant. Point of error one is overruled.

### *BATSON* CHALLENGE

In his second point of error, appellant asserts that the State exercised peremptory challenges in a racially motivated manner prohibited by the Fourteenth Amendment to the United States Constitution, the Texas Constitution, and the Code of Criminal Procedure. *See* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 3; TEX.CODE CRIM. PROC.ANN. § 35.261 (Vernon 1989). *See also Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The jury panel consisted of forty-two persons, six of whom were black. Of the six black veniremembers, one was seated on the jury, two were peremptorily struck by the appellant, and three were peremptorily struck by the State. On appeal, the appellant, who is also black, complains of only one of the State's strikes—that of Titus Larkin.

The trial court impliedly found during a *Batson* hearing that the appellant had made a prima facie case. The prosecuting attorney introduced evidence at the hearing for the purpose of submitting a neutral explanation for striking Mr. Larkin. Appellant's counsel did not cross-examine the prosecuting attorney during the *Batson* hearing. The trial court overruled appellant's *Batson* challenge without filing Findings of Fact and Conclusions of Law. Such a ruling has been held to be an implied finding that none of the peremptory challenges at issue were exercised on the basis of the venireperson's race. *Lewis v. State*, 779 S.W.2d 449, 454 (Tex.App.—Tyler 1989, pet. ref'd).

In reviewing a trial court's determination that a prosecuting attorney gave racially-neutral explanations we look to *Whitsey v. State*, 796 S.W.2d 707, 721–22 (Tex.Crim. App.1989) (opinion on reh'g), where the Texas Court of Criminal Appeals reconsidered the standard to be applied in a *Batson* review and adopted the "clearly erroneous" standard from rule 52(a) of the Federal Rules of Civil Procedure. In adopting the federal standard of review, the Court of Criminal Appeals quoted approvingly of the United States Supreme Court's discussion of the clearly erroneous standard in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985):

> Although the meaning of the phrase 'clearly erroneous' is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles, as the Fourth Circuit itself recognized, is that **"[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."** *United States v. United States Gypsum Co.*, 333 U.S. 364, 395,

68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) [emphasis supplied]. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because ·it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. 'In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.' Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.,* 338 U.S. 338, 842 [sic], 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); see also *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

*Whitsey,* 796 S.W.2d at 721–22. The Court of Criminal Appeals recognized that findings of fact often turn on credibility determinations, and, that under such a situation, rule 52(a) demands even greater deference to the trial court's findings. *Id.* at 722.

█ In addition, our task on appeal in addressing a *Batson* issue is to review the entire record considering the voir dire process including the racial constitution of the venire, the prosecutor's neutral explanations, and appellant's rebuttal and impeaching evidence. *Id.* at 723, 726.

"In order to sustain the trial court's findings we must find that as to *each* minority venireman struck his decision was not clearly erroneous, for the use of one purely racially motivated strike is prohibited by *Batson." Id.* at 727. The prosecutor must

"articulate a neutral explanation related to the particular case to be tried" and give "clear and reasonably specific" explanations of "legitimate reasons" for his use of peremptory strikes. *Id.* at 713. The presence of any one of the following factors tends to show that a prosecutor's stated reasons for striking a venireperson are really just an impermissible pretext:

1. The reason given for the peremptory challenge is not related to the facts of the case;

2. [T]here was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;

4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and

5. [A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Id.* at 713–14.

On the other side of this analysis, the Texas Court of Criminal Appeals articulated examples which would reveal the State's neutrality:

1. The state challenged non-black jurors with the same or similar characteristics as the black jurors who were struck.

2. There is no evidence of a pattern of strikes used to challenge black jurors; e.g., having a total of 6 peremptory challenges, the state used 2 to strike black jurors and 4 to strike white jurors, and there were blacks remaining on the venire.

*Keeton v. State,* 749 S.W.2d 861, 868 (Tex. Crim.App.1988). The *Keeton* court also noted that *Batson* left room for the State to exercise its peremptory strike on the basis of the prosecutor's legitimate hunches and past experiences, so long as racial discrimination is not the motive, and rejected the theory that only objectively supportable explanations of its use of peremptory challenges would survive a *Batson* chal-

lenge. *Id.* at 865–66. The *Keeton* court also noted that:

> Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext.

*Id.* at 868.

The prosecuting attorney testified that she struck Mr. Larkin for three reasons. The first reason given was that, on his juror information card, Mr. Larkin had listed punishment as his third goal in the criminal justice system. The second reason was that Mr. Larkin exhibited hesitancy and confusion about following the law. The third reason was that Mr. Larkin was laughing during voir dire and did not appear to take the proceedings seriously.

 The fact that Mr. Larkin listed punishment as his third goal in the criminal justice system is an adequate, independent, non-racial justification for the prosecutor's decision to peremptorily strike him. *Tennard v. State*, 802 S.W.2d 678, 681–82 (Tex. Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991). *See also Hawkins v. State*, 793 S.W.2d 291, 294 (Tex.App.—Dallas 1990, pet. ref'd).

The other reasons given by the State for striking Mr. Larkin are of a subjective nature. The State's allegation that Mr. Larkin exhibited confusion and hesitancy about his ability to follow the law was based upon the State's individual voir dire examination of Mr. Larkin. The prosecutor stated on the record that Mr. Larkin hesitated before he answered in the affirmative as to whether he could follow the law as explained by the prosecutor. The prosecutor then proceeded to question Mr. Larkin about specific legal issues pertinent to the case. Even though Mr. Larkin agreed with the prosecutor's statements, the prosecutor testified during the *Batson* hearing that she was not convinced Mr. Larkin understood the law. A venireperson's initial lack of belief in a case has been held to be a plausible reason for a peremptory strike despite the fact that the venireperson later said she could follow the law. *See Vargas v. State*, 838 S.W.2d 552, 555 (Tex.Crim.App.1992).

*See also Straughter v. State*, 801 S.W.2d 607, 612, 614 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

Lack of understanding or confusion is a characteristic that has verbal as well as nonverbal components, so that such trait may not be readily apparent from reading the voir dire transcript. *See Tennard*, 802 S.W.2d at 682. *See also Henderson v. State*, 816 S.W.2d 845, 847–48 (Tex.App.— Fort Worth 1991, no pet.). In this case, the appellant's attorney did not cross-examine the prosecuting attorney during the *Batson* hearing or otherwise offer any evidence to show that the State's reasons for striking Mr. Larkin were a pretext. The trial judge observed the voir dire examination of Mr. Larkin, and we must rely on the trial court's observations of Mr. Larkin's answers and demeanor during such questioning. *Id.*

 At the *Batson* hearing, the prosecutor described Mr. Larkin's behavior which made her believe that he was not taking the proceedings seriously. The prosecutor explained that she noticed Mr. Larkin laughing and holding his head down. When the prosecutor relies on the veniremember's attitude or demeanor, and the record of the voir dire reflects no hostility toward the State, the prosecutor's stated reason for the strike must specifically state the body language or nonverbal actions that led the prosecutor to believe that the veniremember was biased against the State. *Cf. Hill v. State*, 827 S.W.2d 860, 870 (Tex.Crim.App.1992); *Martinez v. State*, 824 S.W.2d 724, 727 (Tex.App.—Fort Worth 1992, pet. ref'd). In this case, the State came forward with a description of the nonverbal behavior that prompted it to strike Mr. Larkin.

 In review of the *Batson* issue, we could only reverse if we determined that on the face of the prosecutor's explanations they did not satisfy the required "neutral explanation related to the particular case to be tried" and "clear and reasonably specific" explanations of "legitimate reasons" for her use of peremptory strikes. Since the prosecutor partially based her neutral ex-

planations on nonquantifiable characteristics, and the trial judge personally observed the proceedings, we defer to the trial court's finding. The trial court made the implied finding that the prosecutor's explanations were racially neutral, and under these circumstances and based on the entire record, we are *not* left with a definite and firm conviction that a mistake has been committed. *Whitsey,* 796 S.W.2d at 728. Accordingly, point of error two is overruled.

The judgment of the trial court is affirmed.