Leonard Dean Hughes v. State










 





IN THE
TENTH COURT OF APPEALS
 

No. 10-98-181-CR

     LEONARD DEAN HUGHES,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 25th District Court
Guadalupe County, Texas
Trial Court # 97-0800-CR
                                                                                                                   
                                                                                                           
O P I N I O N
                                                                                                                   
   
      Appellant Hughes appeals his conviction for sexual assault, for which he was sentenced to 17
years in the Institutional Division of the Texas Department of Criminal Justice.
      Appellant was charged with three counts of sexual assault against two girls under 17 years of
age. At trial a jury found Appellant guilty of two of the three counts. Appellant elected to have
the court assess punishment. The court assessed his punishment at 17 years in prison. Appellant
filed a motion for new trial which was overruled by operation of law.
      B.J.C. (then 16 years old) and M.W. (then 15 years old) alleged that Appellant sexually
assaulted both of them on May 3, 1997.
      Cheryl McAlester, Appellant’s wife and mother of B.J.C., was out of town the weekend the
incidents allegedly occurred. When she returned to the home where she, Appellant and B.J.C. all
lived, she learned from her other daughter that there had been a party at her house while she was
away. On Monday, after the alleged incident, Ms. McAlester received a call from B.J.C.’s
school and learned B.J.C. was upset about something. Later that same day she asked Appellant
about the party and Appellant denied knowledge of it. She testified that she asked Appellant
point-blank “if he had sex with my daughter.” She said that Appellant’s mouth dropped and he
said, “I don’t know.”
      B.J.C. testified that she and her mother married on the same day, September 30, 1996. Her
mother married Appellant and she married Jeff Scott. B.J.C. then separated from Scott three
months later and returned to live with her mother and Appellant.
      B.J.C. further testified that on the morning of the day this incident allegedly occurred, she
and M.W. had split a pint of tequila, ingested four Valium tablets, and smoked two joints of
marihuana, all before the incident occurred. She said she and M.W. earlier had been at M.W.’s
father’s house and about 2:00 p.m. decided to go to B.J.C.’s house; that Appellant came home
from his work and the two girls began to joke about being lesbians; that she was “high” at the
time the incident occurred; that she “blacked out” during the time Appellant was having
intercourse with M.W.; that she later came to and saw Appellant having intercourse with M.W. 
She further testified that Appellant penetrated her with both his penis and his finger and that he
did not appear to be intoxicated at the time the incident occurred.
      Joe W. is M.W.’s father. He testified that he is disabled from degenerative arthritis; has
been for seven years; and is wheel-chair bound most of the time. He testified he takes Valium for
muscle spasms; that M.W. asked him if they could have a couple of Valiums; that he first said no,
but did give them one or two; that the girls left to go to B.J.C.’s house between 1:30 and 2:00
p.m. which is about a mile from his house. He said the girls came back to his house later but
made no complaint about Appellant; that he first came to understand something had happened on
Monday when Appellant came to his house and told him B.J.C. and her mother were called to the
school; that Appellant was distraught and upset; that he told him, “They are trying to accuse me
of raping B.J.C.”; that as far as he could remember he didn’t do it, but said he had been smoking
marihuana which would have altered his decisions. Appellant further told Joe W. that “he messed
up; that he might have raped B.J.C.,” and further that he thought he did rape B.J.C. and was
going to kill himself.
      Joe W. testified he was told by Appellant after his wife had been called to the school that
“they are saying that M.W. was also raped.” Joe W. said he called Appellant and told him “they
are saying you raped M.W. also.” Appellant responded: “I don’t know.” Joe W. testified he had
another phone conversation with Appellant, and Appellant told him he had sex with both girls.
      Jeff Scott testified he was 26 years-of-age and worked in New Braunfels; that he married
B.J.C. and they were separated but not divorced. He said he knew Appellant and that Appellant
came to his apartment on Monday, May 5, 1997, and told him B.J.C. accused him of raping her
and M.W.; but that he was not sure as he had been drinking and partying and he didn’t believe he
did it.
      Appellant pled not guilty, did not testify, but offered an alibi witness. The jury convicted
him and the court assessed his punishment at 17 years in prison.
      By other counsel Appellant appeals on three points of error:
      Point 1: “Appellant was denied his Sixth Amendment right of confrontation under the U.S.
Constitution because he was not allowed to cross-examine one of the victims or her father
concerning the victim’s prior false allegations of sexual abuse against another.”
      At the outset of the trial, the court sustained the State’s motion in limine excluding allusions
to the previous sexual conduct of either complainant until such evidence was shown to be
admissible outside the presence of the jury. During a recess in the proceedings, Appellant
requested a hearing on the State’s motion in limine to establish the relevance of evidence that
M.W., one of the complainants, had previously made false allegations of sexual abuse against
others. The stated purpose for admission of such evidence was to impeach M.W.’s credibility. 
With the jury absent, Appellant’s attorney asked the complainant whether she was removed from
her home by Child Protective Services after making allegations of sexual abuse against her father. 
She indicated that she was removed, but testified that she made no charges of sexual abuse against
her father or anyone else. She stated that her mother made the charges. Appellant’s attorney then
questioned M.W. about an interview contained in a Comal County police report in which she and
her sister had made certain allegations of abuse against her cousin, Bryan Pullin. She testified
that she never stated that her cousin had molested her; and that her father directed such
accusations at her cousin after her father had been accused. Appellant’s attorney deferred to a
police report of a prior interview with her but did not offer the report into evidence or call the
officer to contradict M.W.’s testimony. M.W. reiterated that no allegations of sexual abuse had
ever originated with her, and Appellant presented no further evidence of his claim that M.W. had
made such allegations. Based on this testimony, the trial court excluded the evidence, ruling that
the Appellant was not allowed to cross-examine M.W. on this matter before the jury. Appellant
asserts on appeal that the trial court’s prevention of cross-examination of the complainant before
the jury about the prior allegations of abuse amounted to a denial of Appellant’s Sixth Amendment
right of confrontation. 
      Appellant urges that the record reveals that “previous to her accusation against Appellant,
there is evidence that M.W. or her parents on her behalf falsely accused someone, either her
father [Joe W.] or her cousin, of sexual abuse.” Consequently, Appellant contends that he should
have been allowed to explore M.W.’s credibility before the jury.
      In Lopez v. State, the defendant was charged with the sexual assault of a minor. Lopez v.
State, 18 S.W.3d 220, 221 (Tex. Crim. App. 2000). At trial, he sought to impeach the credibility
of the complainant with evidence that the complainant had previously made allegations of physical
abuse against his mother. Id at 221-22. The trial court excluded the evidence, and the defendant
appealed. Id. at 222. The court of appeals reversed, holding that the Confrontation Clause
required the admission of the evidence, notwithstanding the fact that the evidence was
inadmissible under Rule of Evidence 608(b)


. Id. The Court of Criminal Appeals granted the
State’s petition for discretionary review, and reversed the decision of the court of appeals. The
court acknowledged that, in certain situations, the Confrontation Clause may require the
admission of evidence that is inadmissible under the Rules of Evidence. Id. at 225. However,
the court held that “[w]ithout proof that the prior accusation was false or that the two accusations
were similar, the evidence fails to have any probative value in impeaching [the complainant’s]
credibility in this case.” Id. at 226. As a result, “the risk that [the] evidence would unduly
prejudice and confuse the jury was high.” Id.
      In Hughes v. State


, the Appellant sought to impeach the complainant’s credibility with
testimony from her mother that the complainant had made prior false allegations of sexual abuse
against two men. Hughes v. State, 850 S.W.2d 260, 263 (Tex. App.—Fort Worth 1993, pet
ref’d). The court of appeals held that the evidence was properly excluded because Hughes failed
to show that the accusations were, in fact, false. Id. The court concluded that, without a showing
that the accusations were false, “the excluded evidence does not establish a motive for the
complainant to lie in the case at bar.” Id.
      In Lackey v. State, the trial court excluded evidence that the mother of the complainant had
previously accused an ex-husband of “fooling around” with one of her daughters. Lackey v.
State, 777 S.W.2d 199, 200 (Tex. App.—Fort Worth 1989, no pet). Because the evidence
establishing the State’s case was presented primarily by the complainant herself and her brother,
the court of appeals held that the evidence excluded did not call into question the credibility of
witnesses crucial to the establishment of the offense. Id. 
      We conclude that, as a predicate to the admission of evidence of prior false allegations of
sexual abuse, the offering party must establish that the evidence reasonably calls into question the
credibility of a witness crucial to the establishment of the offense. See Beckley v. State, 827
S.W.2d 74, 77 (Tex. App.—Fort Worth 1992, no writ). In the case at bar, the primary witnesses
for the State were the two complainants. At the hearing on the State’s motion in limine, M.W.
clearly testified that she had never made allegations of sexual misconduct against anyone, and that
any such allegations originated with her parents. The trial court could properly have concluded
that the evidence was not probative of the complainant’s credibility, or alternatively that its
probative value was substantially outweighed by the danger of unfair prejudice or confusion of the
issues. See Tex. R. Evid. 403. Because appellant did not present evidence of “facts from which
jurors could appropriately draw inferences relating to the reliability of the witness,” restriction of
his cross-examination did not amount to a violation of the confrontation clause. See Olden v.
Kentucky, 488 U.S. 227, 231, 109 S.Ct. 480, 483, 102 L.Ed.2d 513, 519 (1988).
      The State also requested and was granted a motion in limine with respect to the complainant’s
father, Joe W., to prevent Appellant’s cross-examination regarding the prior allegations of abuse
until Appellant made a preliminary showing of relevance. The trial court sustained the State’s
relevance objection when, during Appellant’s cross-examination of Joe W., he began to discuss
the prior allegations. Appellant’s attorney later asked that he be allowed to go into “that other
incident.” The trial judge denied the request, having previously found that Joe W,’s alleged false
accusation was not relevant to the case against Appellant. Appellant did not request a hearing
outside the presence of the jury or a bill of exception to explore Joe W.’s prior allegation. 
Neither did Appellant object to the court’s denial of his request to ask Joe W. about it. 
Furthermore, the substance of the testimony was not apparent from the context in which the
questions were asked. See Tex. R. Evid. 103(a)(2). To preserve error for appellate review the
complaining party must make a specific objection and obtain an adverse ruling from the trial
court. No error was preserved. See Tex. R. App. P. 33.1(a).
      Appellant asserts that the State’s objection and the trial court’s adverse ruling sufficiently
preserved error because the substance of the evidence had been revealed through the earlier
testimony of the complainant, M.W. Specifically, Appellant contends that the testimony of M.W.
was sufficient to apprise the trial court of the facts Appellant sought to establish and the relevance
of those facts to the complainant’s credibility. Although it is clear that the Appellant was
attempting to elicit testimony regarding prior allegations of abuse made by M.W., the record does
not indicate what Joe W. would have said about the nature of the allegations, their truth or falsity,
or at whom they were directed. As discussed at length above, the offering party must establish
that the evidence reasonably calls into question the credibility of a witness crucial to the
establishment of the offense as a prerequisite to its admission. See Beckley v. State, 827 S.W.2d
74, 77 (Tex. App.—Fort Worth 1992, no pet.); Lackey v. State, 777 S.W.2d 199, 200 (Tex.
App.—Fort Worth 1989, no pet). Appellant made no such showing with respect to either the
complainant’s testimony or her father’s. Appellant’s Point 1 is overruled.
      Point 2: “Appellant was denied effective assistance of counsel as guaranteed by the Sixth
Amendment of the U.S. Constitution.” 
      Strickland v. Washington, 466 U.S. 688 and Hernandez v. State, 726 S.W.2d 53, 57, set the
standard for analyzing a claim of ineffective assistance of counsel. These cases adopted a two-pronged analysis for claims of ineffective assistance. Under the first prong, the defendant must
show that counsel’s performance was deficient by norms of the community to the extent that
counsel failed to function as the “counsel” guaranteed by the Sixth Amendment. Strickland, p.
687. Under the second prong, the defendant must show that counsel’s performance prejudiced the
defense. Id. To show prejudice, “the defendant must show that there is a reasonable probability
that, but for counsel’s unprofessional errors, the results of the proceeding would have been
different.” A reasonable probability is a probability sufficient to undermine confidence in the
outcome. Id, p. 694. The right to effective counsel is not the right to error-free counsel. 
Hernandez, p. 58. The standard for effectiveness of counsel is “counsel reasonably likely to
render and rendering effective assistance.” Whether this standard has been met is to be judged by
the totality of counsel’s representation and not by isolated acts or omissions of trial counsel. Solis
v. State, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990). The burden of proving ineffective
assistance is on the defendant and it must be proved by a preponderance of the evidence. Moore
v. State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985). When reviewing a claim of ineffective
assistance, “a court must indulge a strong presumption that counsel’s conduct falls within a wide
range of reasonable professional assistance;” that is, the defendant must overcome the
presumption that, under the circumstances, the challenged action or omission “might be
considered sound trial strategy.” Strickland, p. 689; Jackson v. State, 877 S.W.2d 768 (Tex.
Crim. App. 1994).
      The victims testified that the assault occurred sometime between 2 p.m. and 3 p.m. 
Appellant asserted an alibi defense that he was at work during the time the girls said the assault
occurred.
      Appellant’s counsel called as a defense witness Tom Alevort, a fellow employee of appellant. 
Alevort placed Appellant at work for most of the day except between 2 p.m. and 3 p.m. in the
afternoon when the assault occurred. Alevort testified he procured Appellant’s “time cards” from
the company’s headquarters in South Carolina, but that he gave them to Appellant and has not
seen them since. The trial court sustained objections to Alevort’s testimony regarding what he 
remembered the time cards said, and he was only allowed to testify to his own recollection of
when Appellant showed up for work, which he testified was “about three-ish.”
      Appellant contends his counsel ineffective because he did not fully investigate or prepare his
alibi defense; by failing to contact the proper witnesses, and to obtain the records to provide
evidence that Appellant was working at the time the incident occurred (i.e., 2 p.m. to 3 p.m.).
      Appellant did not explain why he did not give the pertinent records in his possession to his
attorney for use at trial.
      There is no evidence that any additional alibi witnesses existed, and trial counsel may have
known or perceived that the “time cards” which Appellant had in his possession would not have
shown Appellant at work at the time the assaults occurred. In any event, Appellant has not
carried his burden to prove trial counsel ineffective under the cited authorities.
      Moreover, viewing counsel’s representation as a whole, we do not find that the result would
have been different but for the asserted errors. Both girls testified as to what occurred; the girls
reported the incident at school the next day; and Appellant admitted to one of the girl’s fathers
that he had committed the offense.
      Point 2 is overruled.
Point 3: “There is insufficient evidence to support Appellant’s conviction.”
      Specifically, Appellant complains that the evidence is legally insufficient to support a finding
of penetration, an essential element of the offense of sexual assault.
      When reviewing the legal sufficiency of the evidence, we must examine all the evidence to
determine if any rational trier of fact could have found the essential elements of the crime beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Criner v. State, 860 S.W.2d
84, 86 (Tex. Crim. App. 1992). In making this examination, we view the evidence in the light
most favorable to the verdict. Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989). If
there is any evidence that establishes guilt beyond a reasonable doubt, the conviction is not
subject to reversal. Anderson v. State, 871 S.W.2d 900, 902 (Tex. App.—Houston [1st Dist.]
1994, no pet.).
      B.J.C. and M.W. testified Appellant penetrated their sexual organs with his penis and, in
M.W.’s case, additionally with his finger. Appellant argues that because the girls were drinking,
taking Valium and smoking marihuana, their testimony should not be believed. Additionally,
Appellant’s testimony and actions were such that the jury could believe that he admitted his guilt.
      The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given
their testimony. Hoskins v. State, 960 S.W.2d 207, 209 (Tex. App.—Corpus Christi 1997, no
pet.). A rational trier of fact could have found the elements of the crime beyond a reasonable
doubt. Point 3 is overruled.
MOTION TO ABATE
      Appellant has filed a motion to abate the appeal, requesting that we suspend the application of
the rules under Rule of Appellate Procedure 2(b) so that he may file an out-of-time motion for
new trial based on newly discovered evidence.
      Rule of Appellate Procedure 2 allows an appellate court to “suspend a rule’s operation in a
particular case and order a different procedure” in order to expedite a decision or for “other good
cause.” Tex. R. App. P. 2. In Oldham v. State, the Court of Criminal Appeals criticized the use
of Rule 2(b) to extend the 30 day deadline for filing a motion for new trial. Oldham v. State, 977
S.W.2d 354, 360 (Tex. Crim. App. 1998). The court opined:
While in a small number of cases the litigation process may ultimately be
shortened, we think that the associated delays and restarting of the appellate
process upon such speculation makes this an improper use of Rule 2(b). Rule
2(b) is in essence an escape valve to be used by an appellate court when a case
becomes unduly stalled or delayed in the appellate process due to procedural
rules, and the interests of justice compel speeding up the process; although Rule
2(b) may be used to shorten the time limits when justice so requires, it should
not be used as a method to lengthen procedural time limits absent truly
extraordinary circumstances, even in an effort to protect the substantive rights of
litigants.

Id. (citations omitted).
      Furthermore, an important consideration in determining whether to allow an out-of-time
motion for new trial is whether the issue sought to be resolved can serve as the basis for habeas
corpus relief. Bowler v. State, 822 S.W.2d 334, 335 (Tex. App.—San Antonio 1992, pet. ref’d). 
A claim of newly discovered evidence is now fully cognizable by way of habeas corpus. See
Elizondo v. State, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996) (overruling Ex Parte Binder,
660 S.W.2d 103 (Tex. Crim. App. 1983)). For the foregoing reasons, Appellant’s motion to
abate is denied.
      The judgment is affirmed.
 
                                                                         FRANK G. McDONALD
                                                                         Chief Justice (Retired)

Before Chief Justice Davis,
      Justice Vance and
      Chief Justice McDonald (Retired)
Affirmed; motion to abate denied
Opinion delivered and filed July 26, 2000
Do not publish