

NUMBER 13-06-00691-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

**LORENZO EMILIO RODRIGUEZ,**                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

**On appeal from the 139th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellant, Lorenzo Emilio Rodriguez, was indicted for the offense of sexual assault.

*See* TEX. PENAL CODE ANN. § 22.011(a)(1) (Vernon Supp. 2008). Rodriguez pleaded not

guilty and proceeded to trial. After the jury found Rodriguez "guilty," the trial court

sentenced him to twelve years' imprisonment in the Texas Department of Criminal

Justice–Institutional Division. By five issues, Rodriguez challenges the sufficiency of the evidence to support his conviction and contends that the trial court reversibly erred by denying his motion for directed verdict and his Sixth Amendment right to confront and cross-examine the alleged victim. We affirm.

## I. BACKGROUND

On August 13, 2004, after leaving a night club, Rodriguez invited Victor Guzman and several other people to his apartment. Around 3:00 a.m., Guzman called J.S., his ex-girlfriend, and asked her for a ride. J.S. went to Rodriguez's apartment and drove Guzman and Rodriguez to Rodriguez's brother's house to pick up a bottle of alcohol and then to a convenience store. They returned to Rodriguez's apartment and drank the alcohol.

According to J.S., after looking at her watch at 7:45 a.m., she fell asleep on the sofa. When she awoke at approximately 10:00 a.m., she was on the bed, naked from the waist down. Rodriguez was standing at the edge of the bed with her pants in his hand. She got dressed and discovered that Guzman was not at the apartment and that her cell phone and car were missing. Rodriguez drove her around to look for Guzman, but they did not find him. When they returned to the apartment, J.S. borrowed a phone from one of Rodriguez's neighbors, called Guzman, and demanded that he return to the apartment to pick her up. She asked Guzman why he "left her like that" on the bed, and Guzman denied doing so. According to J.S., her vaginal area was sore, and she realized that Rodriguez had had sex with her. J.S. testified that she never consented to having sex with Rodriguez and that she did not remember having sex with him because she had been asleep when the sexual assault occurred.

Guzman testified that he left the apartment at around 7:00 a.m. to cash a money order and that when he returned approximately ten minutes later, he could not find J.S. Rodriguez informed Guzman that J.S. left after a confrontation with Rodriguez's girlfriend. Guzman explained that he felt something was wrong, so he left the apartment to look for J.S and, after receiving a phone call from her, returned to the apartment. J.S. was waiting for him in the parking lot. She was upset and told Guzman that her vaginal area was sore. J.S. returned home and told her mother about the incident. J.S.'s mother urged her to file a police report.

A jury found Rodriguez guilty, and he was sentenced to twelve years' imprisonment. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

By his first three issues, Rodriguez challenges the sufficiency of the evidence to support the elements of penetration and consent.

### A. Standard of Review and Applicable Law

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

3

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or the jury's verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not reverse the jury's verdict unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *Id.* at 417.

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. Under a hypothetically correct jury charge, a person commits the offense of sexual assault if the person "intentionally or knowingly causes the penetration of the anus or sexual organ by any means without that person's consent." *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A).

To establish "penetration" in a sexual assault case, proof of the slightest penetration of any part of the female sexual organ is sufficient. *See Nilsson v. State*, 477 S.W.2d 592, 595 (Tex. Crim. App. 1972); *see also Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (en banc). Proof that the vagina was penetrated is not necessary, and "[p]enetration between the labia of the female's private parts by the male sexual organ of the defendant is sufficient although the vagina was not entered or an act of intercourse was

4

never completed."  *Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976).

Moreover, proof of penetration may be circumstantial.  *Nilsson*, 477 S.W.2d at 595.

### B.  Analysis

By his first issue, Rodriguez contends that the evidence was legally insufficient to establish that his sexual organ penetrated J.S.'s sexual organ.  Specifically, Rodriguez claims that although swabbings were taken from J.S.'s vagina, there is no evidence that the swabbings were taken from "inside" her vagina.  It appears that Rodriguez is arguing that there is a distinction between the "inside" of the vagina and the vaginal area.  We are not persuaded by Rodriguez's argument.

During direct examination, Lorenza Guerrero, the sexual assault nurse examiner, testified that she examined J.S. and used swabs to acquire evidence from J.S.'s "vaginal area."  Guerrero used the term "vaginal swabs."  Crystal Dawn Cates Anderson, a forensic scientist with the Texas Department of Public Safety Crime Laboratory,  received a sexual assault kit taken from J.S.  According to Anderson, the kit included, among other things, "vaginal swabs."  Anderson referred to a "vaginal smear" and explained that a smear is taken by smearing the swabs onto a glass slide that is then viewed under a microscope.

Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance. *Medford v. State*, 13 S.W.3d 769, 771-72 (Tex. Crim. App. 2000) (citing *Vernon*, 841 S.W.2d at 409).  "Vagina" is defined as "a canal in a female . . . that leads from the uterus to the external orifice of the genital canal." MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/vagina (last visited November 17, 2008).  "Vaginal" is defined as "of, relating to, or affecting the genital vagina." *Id.*, *available*

5

*at* http://www.merriam-webster.com/dictionary/vaginal (last visited November 17, 2008). The Legislature has not defined "vaginal." Therefore, in the context of the testimony, in order to acquire swabs from the area "of or relating to the vagina" (the "vaginal area"), the jury could have reasonably concluded that the "vaginal swab" was taken from inside the vagina; from "the canal that leads from the uterus to the external orifice of the genital canal." Furthermore, Guerrero testified that she used a speculum[1] to visualize J.S.'s "vaginal area" and that during the course of the examination she used a swab to collect a sample of evidence from the vaginal area. In this context, it is reasonable to interpret "vaginal area" as referring to the specific part of the female anatomy as defined above.

To establish that penetration occurred, the State offered J.S's testimony and vaginal swabs taken from J.S. containing spermatozoa. J.S. testified that after she awoke and left Rodriguez's apartment, she noticed that her vaginal area felt sore and realized that she and Rodriguez had had sex. Anderson testified that while conducting a sexual assault examination of J.S., she found spermatozoa on the vaginal smears taken from J.S. According to Anderson, Rodriguez could not be excluded as a "contributor to the sample" taken from the vaginal smear, and the sample could not have come from another source.

Viewed in a light most favorable to the verdict, a rational jury could have concluded that Rodriguez's semen was found in J.S.'s vagina or in a place so closely associated with her vagina that the further conclusion that Rodriguez penetrated J.S.'s sexual organ would be reasonable. *See Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817; *Sherbert*, 531 S.W.2d at 637. We overrule Rodriguez's first issue.

---

[1] A "speculum" is "an instrument inserted into a body passage especially to facilitate visual inspection or medication." MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/speculum (last visited November 17, 2008).

By his second and third issues, Rodriguez argues that the State failed to prove lack of consent because there was no evidence he intentionally impaired J.S.'s power to appraise or control his conduct by administering any substance without J.S.'s knowledge.[2] *See* TEX. PENAL CODE ANN. § 22.011(b)(6). However, the penal code provides several other ways a sexual assault can be committed without consent. *See generally id.* § 22.011(b).

In this case, the State alleged in the indictment that J.S. did not consent and that Rodriguez knew that J.S. was unaware that the sexual assault was occurring. *See id.* § 22.011(b)(5). Therefore, under a hypothetically correct jury charge, *Malik*, 953 S.W.2d at 240, Rodriguez committed the offense of sexual assault if he had sex with J.S. without her consent and knew that she was unaware that the sexual assault was occurring. *See* TEX. PENAL CODE ANN. § 22.011(b)(5). Thus, proof of guilt under that theory, a theory that Rodriguez does not challenge, will support the conviction. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Rodriguez had sex with J.S. without her consent and knew that J.S. was unaware that the sexual assault was occurring. *Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817. Furthermore, after reviewing the evidence in a neutral light we conclude that the evidence is not so weak that the jury's verdict seems clearly wrong and manifestly unjust or that the jury's verdict is against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 414-15. Therefore, we conclude

---

[2] This is one manner, among others, in which a sexual assault can be committed without consent under Texas Penal Code section 22.011(b)(1-11). *See* TEX. PENAL CODE ANN. § 22.011(b)(1-11) (Vernon Supp. 2008).

the evidence is legally and factually sufficient to support the verdict. We overrule Rodriguez's second and third issues.

## III. Instructed Verdict

By his fourth issue, Rodriguez contends that the trial court erred by denying his motion for instructed verdict. Because we have concluded above that the evidence is legally sufficient to support the challenged elements, the trial court did not err in denying Rodriguez's motion for instructed verdict. *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (en banc) (providing that a challenge to a motion for directed/instructed verdict is an attack on the sufficiency of evidence to sustain the conviction); *Cantu v. State*, 944 S.W.2d 669, 670 (Tex. App.–Corpus Christi 1997, pet. ref'd) (citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)). We overrule Rodriguez's fourth issue.

## IV. Confrontation Clause

By his fifth issue, Rodriguez contends that the trial court violated his rights as guaranteed by the Sixth Amendment's Confrontation Clause. Specifically, Rodriguez argues that the trial court erred by limiting his cross-examination of J.S. regarding an alleged false allegation of rape.

### A. Standard of Review and Applicable Law

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2007). We should uphold the trial court's judgment unless the trial court's decision lies outside the "zone of reasonable disagreement." *Id.*

The rules of evidence generally prohibit the admission of evidence concerning a victim's past sexual conduct. Tex. R. Evid. 608(b) (providing that specific instances of

conduct "for the purpose of attacking the witness' credibility . . . may not be inquired into on cross-examination"). However, the Confrontation Clause sometimes requires admission of evidence that is otherwise prohibited. *Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000) (acknowledging that "the Confrontation Clause occasionally may require the admissibility of evidence that the Rules of Evidence would exclude").

In determining whether evidence should be admitted under the Confrontation Clause, the trial court balances the probative value of the evidence sought to be introduced against the risk it's admission entails. *Lopez,* 18 S.W.3d at 225. Although the accused has the right to cross-examine the witnesses, that right is not absolute, and trial courts have "broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Id.* at 222. A defendant has broad latitude to pursue avenues of cross-examination "reasonably calculated to expose motive, bias, or interest for the witness to testify." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996) (en banc).

### B. Analysis

At a hearing outside the presence of the jury, Rodriguez offered the testimony of Officer Humberto Macias to support his claim that J.S. had made false allegations of rape against another man and, thus, attack her credibility. Officer Macias testified that approximately two years before Rodriguez's trial, he arrested J.S. for driving while intoxicated. Officer Macias stated that after placing J.S. in his vehicle, she removed her handcuffs and escaped. According to Officer Macias, after apprehending J.S., she shouted, "Now you have done it. I'm going to have your job. Let go of my breast. Stop

touching my breasts, you pervert." Officer Macias testified that after handcuffing J.S. a second time, she thrust her buttocks against his pelvis and yelled, "[S]top grabbing my ass. Are you trying to rape me?"

On cross-examination by the State, Officer Macias clarified that J.S. never accused him of having sex with her but merely asked, "Are you trying to rape me?" He further testified that it was possible that his arm touched J.S.'s breast while he was attempting to restrain her. J.S., also testifying outside the presence of the jury, stated that she had never made false accusations of rape against anyone. Neither Rodriguez nor the State asked J.S. about the incident that Officer Macias described.

Rodriguez 's attempt to impeach J.S.'s credibility by introducing evidence that she made allegations of rape against a man other than Rodriguez is unsupported. Without a showing that J.S. actually made a false accusation of rape, any evidence likely to be obtained in cross-examining her about the incident with Officer Macias would not have been probative to impeach her credibility. *See Lopez*, 18 S.W.3d at 226; *Hughs v. State*, 850 S.W.2d 260, 262-63 (Tex. App.–Fort Worth 1993, pet. ref'd) ("When there is no evidence that the complainant made false accusations, any evidence concerning the accusations is inadmissible."); *Rushton v. State*, 695 S.W.2d 591, 594 (Tex. App.–Corpus Christi 1985, no pet.). In addition, Rodriguez did not demonstrate that the excluded evidence was a proper subject for cross-examination because he did not show that the line of cross-examination he sought was reasonably calculated to expose motive, bias, or interest for J.S. to testify. *See Carroll*, 916 S.W.2d at 497; *see also Hughs*, 850 S.W.2d at 262. Therefore, based on the trial court's broad discretion to impose reasonable limits on cross-examination, it was reasonable for the trial court to conclude that there was a high

10

risk that this testimony would unduly prejudice and confuse the jury. *See Lopez*, 18 S.W.3d at 226. We conclude the trial court's decision to exclude this evidence does not lie outside the "zone of reasonable disagreement," and the trial court did not abuse its discretion. *Oprean*, 201 S.W.3d at 726.

By a sub-issue, Rodriguez argues that the trial court erred in denying his request to cross-examine J.S. about another prior incident involving J.S.'s arrest for driving while intoxicated. Rodriguez argues that because J.S.'s testimony left a false impression with the jury that she was taken advantage of while under the influence of alcohol, he should have been allowed to rebut this impression with evidence that, while intoxicated, J.S. has the capacity to drive, to be aggressive, and to be abusive. However, Rodriguez has not shown how his cross-examination of J.S. regarding this prior DWI was reasonably calculated to expose motive, bias, or interest for J.S. to testify against him. *See Carroll*, 916 S.W.2d at 497; *see also Hughs*, 850 S.W.2d at 262. Therefore, the trial court did not abuse its discretion in excluding this evidence. *Oprean*, 201 S.W.3d at 726. We overrule Rodriguez's fifth issue.

## V. CONCLUSION

We affirm the trial court's judgment.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 4th day of December, 2008.

11