Reversed and Remanded and Opinion filed May 9, 2006









Reversed and Remanded and Opinion filed May 9, 2006.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00514-CR

____________

 

THOMAS OTIS PALMER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 47164

 



 

O P I N I O N

A jury convicted appellant Thomas Otis
Palmer of aggravated sexual assault of a child 
and indecency with a child by exposure and assessed punishment,
respectively, at life imprisonment and a $10,000 fine and ten years= imprisonment and
a $10,000 fine.  In four issues,
appellant complains (1) the jury charge contained error, (2) the evidence is
legally and factually insufficient to establish penetration, and (3) the
evidence is factually insufficient to establish that the incident giving rise
to both indictments occurred.  Because we
find error exists in the jury charge error that caused appellant egregious
harm, we reverse and remand.








Factual and
Procedural Background

Appellant lived with his girlfriend, Jill,
and her three minor daughters L.G., fourteen, complainant L.M., eight, and
C.M., six.[1]  On April 24, 2003, Jill moved with her
daughters into the Brazoria County Women=s Shelter.  Four days later, Ronald Weidman, a Child
Protective Services investigator, interviewed L.M.  Weidman asked L.M. if anyone had ever touched
her inappropriately, and at that time, L.M. answered no.  However, three days later, L.M. told Jill
that one night while Jill was working, appellant exposed his penis to her and
C.M. while they were on Jill=s bed and Astuck his finger
inside of [L.M.].@  He
then asked if anyone had done that to her before and told her to smell his
finger.  L.M. later told an interviewer
at the Children=s Assessment Center about the sexual
assault.  The State charged appellant
with aggravated sexual assault and indecency with a child.

At trial, the State called Jill, who
testified about L.M.=s outcry statement.  L.M. then testified about the sexual
assault.  She said she did not remember
if appellant touched her on the inside or outside of her vagina but that it
hurt on the inside.  She also said she
initially did not tell anyone about the sexual assault because she was afraid
of appellant.  Some of L.M.=s testimony about
the assault differed from Jill=s account of her
outcry statement.[2]  During cross-examination, appellant
questioned her about these differences, and L.M. replied, AShe probably didn=t hear me right.@  Also during cross-examination, appellant
asked L.M. about a similar sexual assault accusation she made about three years
previously against her mother=s friend, Melissa
Bridges.  L.M. testified that she was lying on Jill=s bed when Bridges reached under her
clothes and inserted her finger in L.M.=s vagina.  As with appellant, an uninvolved third person
was in the room when Bridges sexually assaulted L.M., and Bridges only
assaulted her once.








The State also called pediatrician Dr.
Sheela Lahoti, who testified that L.M. had a normal physical exam with Ano evidence of
penetrating trauma.@ 
However, Dr. Lahoti also said that because the abuse allegedly occurred
seven months prior to L.M.=s examination, it
was Ahighly unlikely@ that any injuries
would still be visible.  Margaux
LaFortune, a youth and family therapist who treated L.M., testified that L.M.
exhibited some symptoms of post-traumatic stress disorder, suggesting she had
experienced a traumatic event.  Upon
questioning by the State, LaFortune further testified that children who are
coached to lie about sexual abuse are unlikely to be able to consistently Afake@ emotional
reactions to the alleged abuse.

Appellant called his step-mother, Jenny
Palmer.  Palmer testified that on April
24, 2003, she asked L.M. if appellant had ever touched her because Jill was Aconcerned about [appellant=s] actions.@  L.M. told Palmer, A[N]o, he knows not
to touch me because I would tell because I tell everything, don=t I, mommy?@  Palmer said she asked L.M. the same question
on three separate occasions, and L.M. always answered the same.  At trial, L.M. testified that she did not remember Palmer
asking her if appellant touched her inappropriately.  She also said she did not remember meeting
with Weidman or that he asked her if anyone had inappropriately touched her. 

Analysis








In his first issue, appellant claims the
jury charge contains error.  In assessing
such a claim, we first determine whether error exists in the jury charge.  Arline v. State, 721 S.W.2d 348, 351
(Tex. Crim. App. 1986).  If error
is found, we next determine whether it was so harmful as to require reversal of
the conviction.  Id.  The degree of harm required for reversal
depends on whether the error was preserved. 
Id.  Where, as here, the
appellant failed to preserve error by objecting at trial, he must show on
appeal that the error was Aso egregious and
created such harm that he >has not had a fair
and impartial trial.=@  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984); see also Hutch v. State, 922 S.W.2d 166, 174
(Tex. Crim. App. 1996) (finding egregious harm where jury charge stated
opposite of the law).  In determining
harm, the reviewing court may consider (1) the jury charge itself, (2) the
state of the evidence, including contested issues and the weight of the
probative evidence, (3) arguments of counsel, and (4) any other relevant
information in the record.  Hutch,
922 S.W.2d at 171. 

The jury charge included the following
instructions:

There is also testimony before you in this case concerning
a previous allegation of sexual assault made by [L.M.] You cannot consider
such evidence unless you first find beyond a reasonable doubt that the allegation
made by [L.M.] was false, and even then, you may only
consider the same in aiding you, if it does aid you, in judging the credibility
of [L.M.] and for no other purpose.

(emphasis added). 
         








A defendant seeking to impeach a witness
with evidence of a previous false accusation against a third party must, as a
threshold evidentiary matter, produce evidence showing the prior accusation is
actually false.  See Lopez v. State,
18 S.W.3d 220, 225B26 (Tex. Crim. App. 2000) (approving trial
court=s exclusion of
complainant=s previous accusation of physical abuse
against third party when it was Anever shown to be
false@);  Lape v. State, 893 S.W.2d 949, 955
(Tex. App.CHouston [14th Dist.] 1994, pet. ref=d) (upholding
exclusion of prior accusations of sexual assault against third parties when the
appellant produced no evidence of falsity); Hughes v. State, 850 S.W.2d
260, 262B63 (Tex. App.CFort Worth 1993,
pet. ref=d) (same).  The trial court evidently found that
appellant met this burden when it admitted the evidence.[3]  After the evidence was admitted, it was the
exclusive province of the jury to determine L.M.=s credibility and
the weight of her testimony and to reconcile conflicts in the evidence.  See Wesbrook v. State, 29 S.W.3d 103,
111 (Tex. Crim. App. 2000).  However, the
jury charge erroneously required the jury to find L.M.=s prior accusation
false beyond a reasonable doubt before using it to weigh her
credibility.  Moreover, no limiting
instruction was needed because it was apparent that appellant offered the
evidence for impeachment only.  See
Cantrell v. State, 731 S.W.2d 84, 95 (Tex. Crim. App. 1987) (AIt is well
established that where testimony in question could only be used by the jury for
impeachment, no limiting charge to the jury is required.@); Jones v.
State, 810 S.W.2d 824, 828 (Tex. App.CHouston [14th
Dist.] 1991, no pet.) (A[W]hen a defendant impeaches the State=s witness, an instruction
limiting the jury=s consideration of the impeaching
testimony is unnecessary.@). 
Thus, error exists in the jury charge.

Having found error, we next consider
whether it constitutes egregious harm.  See
Arline, 721 S.W.2d at 351.  Appellant
claims the jury charge error egregiously harmed him because Athe very basis of
this case was [L.M.=s] credibility.@  The prosecutor, during closing arguments,
conceded that L.M.=s credibility was crucial, stating, AObviously, in
order to turn a verdict to guilty [sic] in this case you have to believe [L.M.]=s testimony.  If you don=t believe her
testimony, then there is no evidence of the defendant=s guilt . . . .@  After this remark, the prosecutor repeated
the jury charge=s erroneous Abeyond a
reasonable doubt@ language five times and explained that,
unless the jury found beyond a reasonable doubt that the prior accusation was
false, the evidence could not be considered Afor any purpose,
it=s as if it never
came up in the trial.@ 








We find that, under these particular
facts, the jury charge error caused appellant egregious harm.  In its jury charge, the trial court subjected
the evidence of L.M.=s prior accusation to an unnecessary and
extremely high burden, thus effectively depriving appellant of impeachment
evidence admitted during trial.  The
prosecutor compounded the jury charge error by repeatedly stressing the
erroneous language throughout closing arguments.  See Ngo v. State, 175 S.W.3d 738, 745B48 (Tex. Crim.
App. 2005) (finding egregious harm when prosecutor and trial court repeated
erroneous instruction permitting non-unanimous verdict).  Additionally, the state of the evidence shows
that L.M.=s credibility was a key issue in the case,
which the State acknowledged.  The State
produced no independent evidence of the sexual assault, such as physical
evidence or eyewitness testimony. 
Rather, the testimony by most of the State=s witnesses relied
on L.M.=s claim.  Further, L.M. claimed she delayed her outcry
because she was afraid of appellant and did not remember denying the abuse to
Palmer and Weidman.  There were also
discrepancies between Jill=s and L.M.=s testimony
describing the sexual assault. 
Resolution of these matters in favor of conviction required the jury to
believe that L.M. was telling the truth. 
Under these circumstances, appellant=s impeachment
evidence was vital to his defense. 
Because the jury charge error significantly undermined the jury=s ability to
consider admitted evidence vital to appellant=s defense, it
denied him a fair and impartial trial and caused him egregious harm.  See Almanza, 686 S.W.2d at 171; see
also Ngo, 175 S.W.3d at 750 (AErrors that result
in egregious harm are those that . . . >vitally affect a
defensive theory.=@ (quoting Hutch,
922 S.W.2d at 171)).  Thus, we sustain
appellant=s first issue.  Accordingly, we reverse appellant=s conviction and
remand for a new trial.








In appellant=s second issue, he
complains that the evidence is legally insufficient to support his conviction
for aggravated sexual assault of a child. 
Specifically, he claims the evidence is insufficient to establish that
he penetrated L.M.=s vagina with his finger.  We address this claim even though we sustain
appellant=s first issue.  See Rankin v. State, 46 S.W.3d 899,
901 (Tex. Crim. App. 2001) (noting that A>[a]n appellate
court must always address challenges to the [legal] sufficiency of the evidence=@ (quoting McFarland
v. State, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996) (alterations in
original)).[4]  In conducting a legal-sufficiency review
claim attacking a jury=s finding of guilt, we view the evidence
in the light most favorable to the verdict. 
Wesbrook, 29 S.W.3d at 111. 
We do not ask whether we believe the evidence at trial established guilt
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 318B19 (1979).  Rather, we determine only whether a rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Cardenas v. State,
30 S.W.3d 384, 389 (Tex. Crim. App. 2000). 
In our review, we accord great deference A>to the
responsibility of the trier of fact [fairly to] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@  Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996) (quoting Jackson, 443 U.S. at 319).  We presume that any conflicting inferences
from the evidence were resolved by the jury in favor of the prosecution, and we
defer to that resolution.  Id. at
133 n.13.

We find the evidence legally sufficient to
establish that appellant penetrated L.M. 
Under Texas case law, the slightest penetration of the female sexual
organ is sufficient to uphold a conviction. 
See Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (A[P]ushing aside
and reaching beneath a natural fold of skin into an area of the body not
usually exposed to view, even in nakedness, is a significant intrusion beyond
mere external contact.@); Murphy v. State, 4 S.W.3d 926,
929 (Tex. App.CWaco 1999, pet. ref=d) (finding
penetration where child testified the defendant put his fingers between her
labia and rubbed on the vaginal opening). 
Here, the jury rationally could have inferred that appellant penetrated
L.M. based on her testimony that it hurt inside when he touched her, he told
her to smell his finger afterward, and he asked if anyone had done that
before.  See Villalon v. State,
791 S.W.2d 130, 133B34 (Tex. Crim. App. 1990) (noting that
child victims need not testify to penetration, which the State may prove
through circumstantial evidence). 
Viewing this evidence in a light most favorable to the verdict, we
conclude that a rational jury could have found the elements of aggravated
sexual assault of a child beyond a reasonable doubt.  We overrule appellant=s second issue. 

Because we find that appellant was
egregiously harmed by an erroneous jury instruction, we reverse the trial court=s judgment and
remand for a new trial.  

 

 

/s/      Leslie Brock Yates

Justice

 

 

Judgment
rendered and Opinion filed May 9, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Guzman.

Publish
C Tex. R. App. P. 47.2(b).      











[1]  The girls= ages refer to the time of trial, not the offense.





[2]  L.M. testified
that C.M. was not in the room when appellant touched her vagina but that
appellant called her in afterward and then exposed himself to the girls.  According to Jill, L.M. told her appellant
called C.M. in the bedroom, exposed himself, and then touched her vagina.





[3]  When the trial judge ruled that
appellant could question L.M. about her prior accusation, he commented that Athere is some evidence of falsity
on that.@ 
On appeal, neither side argues that the evidence was improperly
admitted; thus, we do not consider whether the trial court abused its
discretion in admitting it.





[4]  We need not consider appellant=s third or fourth issues raising
factual sufficiency challenges because, unlike his legal sufficiency challenge,
neither issue would entitle appellant to an acquittal instead of remand; thus,
their resolution is not Anecessary to final disposition of
the appeal.@ 
Tex. R. App. P. 47.1.